Nathaniel **BUCHANAN**, etc., et al.,
Plaintiffs,

v.

The Honorable James A. **RHODES**, etc.,
et al., Defendants.

No. C65–159.

United States District Court
N. D. Ohio, E. D.

Feb. 2, 1966.

their prejudice by causing them to wait longer for the completion of their litigation than litigants in smaller counties.

The genesis of this suit is the United States Supreme Court's dramatic reapportionment cases which require that the number of representatives returned to legislative bodies from political subdivisions within the state must be apportioned among the state's political subdivisions in relation to the population of said subdivisions. Our attention is especially directed to Nolan v. Rhodes, 378 U.S. 556, 84 S.Ct. 1906, 12 L.Ed.2d 1034 (1964), which struck down that provision of the Ohio Constitution which required that each county in Ohio have one representative in State House of Representatives. Plaintiffs here claim that as litigants in a heavily populated county, with one judge per 75,000 people, they are forced to endure a waiting period of some three or four years[1] while litigants in a smaller county may have a waiting period of perhaps one year, perhaps two years. Implicit in their demands here is the somewhat questionable premise that the *sole*[2] cause of this delay is the insufficient number of judges in larger counties and that the panacea for delay is an increase in that number to be effected by the apportionment of judges solely upon the basis of population within the jurisdiction which each judge serves. The plaintiffs' claim that the presence of one common pleas judge sitting in Vinton County, with its population of 10,000 people, secures for

Richard M. Markus, Sindell, Sindell, Bourne, Markus, Stern & Spero, Cleveland, Ohio, for plaintiffs.

William B. Saxbe, Atty. Gen., William T. Bodoh, Asst. Atty. Gen., Columbus, Ohio, for defendants Honorable James·A. Rhodes, etc. and other individual defendants holding office in State of Ohio.

John T. Corrigan, Pros. Atty., A. M. Braun, John L. Dowling, Asst. Pros. Attys., Cuyahoga County, Cleveland, Ohio, for defendants Frank M. Gorman, etc. and other individual defendants holding office in Cuyahoga County, Ohio.

CONNELL, Chief Judge.

The plaintiffs are litigants involved in personal injury lawsuits filed in the Court of Common Pleas, Cuyahoga County, Ohio. Their Complaint alleges that constitutional and statutory provisions establishing the judicial structure in Ohio, whereby each county is guaranteed at least one judge in the court of general jurisdiction (the court of common pleas), operate to deprive the plaintiffs of equal treatment under the law. They aver that the counties encompassing urban areas with larger populations, in particular Cuyahoga County, have fewer judges per population unit and that the disproportionate number of judges operates to

1. The plaintiffs would have us presume that a three to four year delay is necessarily prejudicial in every case. There are provisions which permit the advancement on the docket of cases in which one or the other party can show possible prejudice by delay (Cf. Common Pleas Court Rule 16); the plaintiffs would have us presume that these measures are necessarily ineffective and that, despite their availability, all plaintiffs who must wait three to four years for justice are necessarily prejudiced.

2. We can take judicial notice of the many studies and surveys which have been made in urban areas which have attempted to expose the causes of docket backlog and to suggest some possible remedies. While the number of judges serving in each county is necessarily a significant factor, it is not the only one. We can take judicial notice of a dearth of qualified trial lawyers. We are well aware of the reluctance of the members of the bar to work through the summer months. We can take judicial notice of the weather which makes the Cuyahoga County Common Pleas Court an uncomfortable oven during the summer months, thus rendering the building unusuable for jury trials. It is therefore quite obvious that the number of jurists within the county is not the *sole* factor occasioning delay.

litigants in Vinton County a preferential treatment under color of law and deprives litigants in Cuyahoga County of an equal opportunity for speedy justice. We are asked to recognize a federal constitutional mandate, imbedded in the Equal Protection Clause of the Fourteenth Amendment, which forbids the operation of such a judicial system, and we are asked to convene a three-judge court to enjoin the further operation of that judicial system.

We are surprised that the plaintiffs would have us reapportion only the judges in the trial courts of the state. Should we not also reapportion the number of sheriffs and their deputies so that litigants in heavily populated counties will have an opportunity to secure quicker service of process? Should we not also reapportion the number of clerks of court and their deputies so that litigants in heavily populated counties will have more expeditious processing of the paper work involved in litigation? Since the prejudicial delay is also caused by a paucity of trial lawyers, shall we, considering lawyers as officers of the court (to satisfy the "state action" requirement for invoking the Fourteenth Amendment), reapportion their number among the eighty-eight counties of Ohio? And if this Court can affect the destinies of men by amending an entire judicial structure, what of mere brick and mortar? Should we not also reapportion the number of courthouses and courtrooms in the various counties?[3] These questions supply their own answers.

The plaintiffs thus would plunge us headlong into that thicket of explosive political questions against which Mr. Justice Frankfurter so wisely warned us in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946).

■ This case is presently before us for the consideration of two motions: the plaintiffs' application for the convention of a three-judge court and defendants' motion to dismiss. Ordinarily, it is neither the function nor the prerogative of the district judge to whom is addressed an application for a three-judge court under 28 U.S.C. § 2281[4], to consider the merits of the plaintiffs' alleged grievance.

When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. Idlewild Bon-Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed. 2d 794 (1962).

Where the allegations of the complaint, taken as true, fashion a grievance of constitutional proportions brought about by the operation of a state statute, § 2281 requires that the district court convene a three-judge panel. However, that section is inapplicable—

* * * when the claim that a statute is unconstitutional is wholly insubstantial, legally speaking nonexistent. * * * The reasons for convening an extraordinary court are inapplicable in such cases, for the policy behind the three-judge requirement—that a single judge ought not to be empowered to invalidate a state statute under a federal claim—does not apply. The three-judge requirement is a technical one

3. This is a question of great practical necessity in the instant lawsuit because there are no empty courtrooms in the Cuyahoga County Courthouse.

4. § 2281. An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such state in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

to be narrowly construed, Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800. The statute comes into play only when an injunction is sought "upon the ground of the unconstitutionality" of a statute. There is no such ground when the constitutional issue presented is essentially fictitious. Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962).

Thus, when a complaint is patently without merit in law, as is the plaintiffs' here, a single district judge is empowered, as he is in every civil case, to dismiss the complaint for "failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) (6) Federal Rules of Civil Procedure.

The judicial system of the state of Ohio originates in the Ohio Constitution, specifically Article IV, where it is provided, *inter alia:*

Section 1. The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas, courts of probate, and such other courts inferior to the courts of appeals as may from time to time be established by law.

and that (Section 3):

One resident judge of the court of common pleas, and such additional resident judge or judges as may be provided by law shall be elected in each county by the electors of such county; * * *. Any judge of the court of common pleas may temporarily preside and hold court in any county; and * * * the chief justice of the supreme court of the state * * * may assign any judge to any county to hold court therein.

And that (Section 15):

Laws may be passed to increase or diminish the number of judges of the supreme court, to increase beyond one or diminish to one the number of judges of the court of common pleas in any county, and to establish other courts, whenever two-

thirds of the members elected to each house shall concur therein; * * *.

Ultimately, then, the allocation of judges in the respective counties of Ohio is left to the informed deliberation of the state legislature, as it should be, rather than with the inadequately informed discretion of the federal court. The problem of which the plaintiffs complain, and the difficulties inherent in its resolution, necessarily pose questions of a political nature which are not ripe for solution by the judicial process. The issues thus joined, therefore, are not justiciable.

While we recognize that a precise definition of that elusive term "political issue" is at best a semantic improbability and that the term is best described by example rather than by sweeping generalizations, there are enough consistently recurring characteristics to render the term definable. These are best summarized by Mr. Justice Brennan in Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):

It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements

by various departments on one question.

Even a casual comparison between the allegations of the complaint before us and the criteria suggested by the Supreme Court indicates that we are presented with a "political question."

Plaintiffs do not suggest that we have the power to create any new judgeships and in that way expand the number of jurists sitting in heavily populated counties; the question, then, is whether each county is entitled to have its own judge or whether we must strike down that requirement and reassign judges from sparsely populated counties to the urban counties. We perceive of no judicially discoverable and manageable standards for resolving this issue. If a court of three judges were to be convened, we would require evidence from every county in Ohio relative to the volume of litigation [5] in that county and to the necessity of having a jurist available at each county seat. If we were to undertake an independent resolution of the questions posed by this complaint, we would necessarily express a lack of respect for the bona fide attempts by the Ohio Legislature to increase the number of judges in urban counties to alleviate docket congestion. (Cf. 131 Ohio Laws 165; 130 Ohio Laws 151; 128 Ohio Laws 147; 127 Ohio Laws 475; 126 Ohio Laws 778). For these reasons it is the opinion of this court that the attempted resolution of the political questions raised here would be an encroachment upon an area generally preserved for legislative determination.

■ As much as we abhor the judicial pursuit of questions essentially political in nature, we cannot abdicate our judicial duty to redress grievances arising from violations of federal constitutional rights. Therefore, if the plaintiffs have accurately framed a cause of action based upon the Equal Protection Clause they are entitled to go forward, for the judicial standards by which we appraise such claims—

> * * * are well developed and familiar, and it has been open to courts since the enactment of the Fourteenth Amendment to determine, if on the particular facts they must, that a discrimination reflects *no* policy, but simply arbitrary and capricious action. Baker v. Carr, 369 U.S. 186, 226, 82 S.Ct. 691, 715, 7 L.Ed.2d 663 (1962).

In evaluating the alleged constitutional infirmity of state legislation, we are mindful that—

> No finicky or exact conformity to abstract is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded. See Goesaert v. Cleary, 335 U.S. 464 [69 S.Ct. 198, 93 L.Ed. 163]. And what degree of uniformity reason demands of a statute is, of course, a function of the complexity of the needs which the statute seeks to accommodate. McGowan v. State of Maryland, 366 U.S. 420, 524, 81 S.Ct. 1153, 1188, 6 L.Ed.2d 393 (1961) (Concurring Opinion, Frankfurter, J.)

■ It is apparent that the one judge per county rule, here under attack, is a product of Ohio's desire to have a court of general jurisdiction located conveniently within each county. Is this unreasonable? We think not. Convenience is an essential factor in arranging an effective judicial system, since it is often necessary for a judge to hear emergency measures, to-wit: motions for temporary

---

5. Delay in the process of litigation, which is the real evil complained of, is related to the volume and type of litigation in each court. The volume and character of litigation is not solely related to the population of each jurisdiction, therefore, population cannot be the sole determinative of the number of judges per county.

restraining orders, applications for the writ of habeas corpus, applications for the issuance of search warrants and arrest warrants, and preliminary hearings and the fixing of bail in criminal matters. In short, it is not irrational to supply each county with a judge so situated therein as to be within the convenient reach of any potential litigant. We cannot say, then, that the Ohio constitutional guarantee that each county has its own judge suggests any departure from reason so as to bring that provision into conflict with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

In conclusion, we recognize that the plaintiffs have attempted to draw a close analogy to the legislative reapportionment cases, but they have failed to grasp the thrust of that line of authority. The first principle inherent in our republican form of government is that individual citizens submit to rule by legislative fiat enacted by a majority of a popularly elected legislative body working within a constitutional framework. When the representatives to that legislative body are malapportioned among the several districts within the political unit, then the voting strength of the individual citizens in these subdivisions is of unequal weight. It is the dilution of power in the vote of citizens situated in districts suffering from inadequate representation which brings into play the Equal Protection Clause. And there can be no reasonable justification for a system of apportionment which ignores the relative population of each political subdivision because "Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests." Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Thus the ratio which the population of each political subdivision bears to the population of the whole political unit has become, right or wrong, the sole criterion for judging the equality of representation and voting strength for the individual citizens within each political subdivision.

But in determining the reasonableness of a judicial system which permits at least one judge operating a court of general jurisdiction in each county, we must recognize one glaring distinction between the functions of legislators and the functions of jurists. Judges do not represent people, they serve people. They must, therefore, be conveniently located to those people whom they serve. Location, then, is one of many significant factors which the legislature may properly consider when carrying out its constitutional mandate to create an effective judicial system. The State constitutional provision requiring one judge per county bears a reasonable relation to the State's aim: a conveniently effective judicial system; the efforts heretofore by the legislature to increase the number of jurists in populous counties reflect no departure from reason. Therefore we see no constitutional basis for the plaintiffs' complaint. On the contrary, we recognize, as a matter of law, that the relative population of the counties of Ohio can not be, as the plaintiffs argue, the sole criterion of apportioning judges among the counties.

The plaintiffs' complaint, therefore, must be and is dismissed.