No. 72–621.   WELLS *v.* EDWARDS, GOVERNOR OF LOUI-
SIANA, ET AL.   Affirmed on appeal from D. C. M. D. La.

MR. JUSTICE WHITE, with whom MR. JUSTICE DOUG-
LAS and MR. JUSTICE MARSHALL join, dissenting.

The Louisiana constitutional provisions, which this
Court today upholds against appellant's renewed con-
stitutional attack, provide for the election of the State's
Supreme Court Justices from election districts that are
established without regard to population.  Voters in five
districts, composed of varying numbers of parishes, elect
one justice each.  A sixth district elects two justices.
La. Const., Art. VII, § 9.  The record before the Dis-
trict Court indicated that there was "considerable devia-
tion between the population of some of the [election]
districts," 347 F. Supp. 453, 454,[1] and that, therefore, the
votes of some qualified voters, depending on the happen-
stance of residence, were of less value in electing justices
than others cast elsewhere.  But the District Court
refused even to consider this evidence and, relying on a
few isolated sentences in *Hadley* v. *Junior College Dis-
trict,* 397 U. S. 50 (1970), concluded that "the concept
of one-man, one-vote apportionment does not apply to
the judicial branch of the government."  347 F. Supp.,
at 454.  Summary judgment was entered against appel-
lant, who had attacked the Louisiana scheme under the
Equal Protection Clause of the Fourteenth Amendment.

In *Hadley,* we held that the one-person, one-vote
principle extended to the election of trustees for a con-
solidated junior college district.  Mr. Justice Black,
writing for the Court, stated broadly that, as a gen-
eral rule, "whenever a state or local government

---

[1] The record indicates that in 1970 the election districts ranged
in population from 369,485 to 682,072.  The two-justice district
had a total population of 1,007,449.

decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election." 397 U. S., at 56. The District Court in this case seized upon the phrase "persons . . . to perform governmental functions," and concluded that such persons were limited to "officials who performed legislative or executive type duties." 347 F. Supp., at 455.[2] I find no such limiting import in the phrase. Judges are not private citizens who are sought out by litigious neighbors to pass upon their disputes. They are state officials, vested with state powers and elected (or appointed) to carry out the state government's judicial functions. As such, they most certainly "perform

---

[2] There is language in other district court opinions to the effect that the one-person, one-vote principle does not apply to the judiciary. See, e. g., Holshouser v. Scott, 335 F. Supp. 928 (MDNC 1971), aff'd, ante, p. 807; Buchanan v. Rhodes, 249 F. Supp. 860 (ND Ohio), appeal dismissed for want of jurisdiction, 385 U. S. 3 (1966); Stokes v. Fortson, 234 F. Supp. 575 (ND Ga. 1964). See also New York Assn. of Trial Lawyers v. Rockefeller, 267 F. Supp. 148 (SDNY 1967). The statutory schemes involved in those cases, however, differ materially from the Louisiana provisions at issue here. For example, in Holshouser and Stokes, district judges were nominated through primaries in districts with varying populations; the judges were elected, however, on a statewide basis that conformed to the one-person, one-vote principle. In this context, the district courts rejected the claim that plaintiffs' primary votes were "diluted" by the general election. Cf. Sailors v. Board of Education, 387 U. S. 105 (1967); Dusch v. Davis, 387 U. S. 112 (1967). In Buchanan, plaintiffs claimed that the apportionment of trial judges in the State resulted in fewer judges per capita in urban districts than in rural districts. Plaintiffs challenged the apportionment on the ground that it denied them speedy justice, not on the ground that their vote in statewide elections was diluted.

See generally Note, The Equal-Population Principle: Does It Apply To Elected Judges?, 47 Notre Dame Law. 316 (1971).

governmental functions." Indeed, this Court held precisely that nearly a decade ago, in *Gray* v. *Sanders*, 372 U. S. 368 (1963), by invalidating Georgia's county unit system that had been used for counting Democratic Party primary votes for United States Senator, Governor, statehouse officers, justices of the Supreme Court, and judges of the Court of Appeals. Nowhere did we suggest that the county unit system was any less unconstitutional for the election of judges than for the election of governor. On the contrary, with the most direct language possible, the Court stated:

> "The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications. The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions." *Id.*, at 379–380.

We have held that a State may dispense with certain elections altogether (see *Sailors* v. *Board of Education*, 387 U. S. 105 (1967); cf. *Fortson* v. *Morris*, 385 U. S. 231 (1966)) and we have suggested that not all persons must be permitted to vote on an issue that may affect only a discernible portion of the public, see *Kramer* v. *Union Free School District*, 395 U. S. 621, 632 (1969). What I had thought the apportionment decisions at least established is the simple constitutional principle that, subject to narrow exceptions,[3] once a State chooses to

---

[3] For example, in *Hadley*, Mr. Justice Black conceded the possibility "that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with *Reynolds* . . . might not be required." 397 U. S., at 56. See *Avery* v. *Midland County*, 390 U. S. 474, 483–484 (1968).

select officials by popular vote, each qualified voter must be treated with an equal hand and not be subjected to irrational discrimination based on his residence. See *Reynolds* v. *Sims,* 377 U. S. 533, 554–555 (1964). Nothing could be plainer from Mr. Justice Black's statement in *Hadley,* 397 U. S., at 54–55:

> "[W]hile the office of junior college trustee differs in certain respects from those offices considered in prior cases, it is exactly the same in the one crucial factor—these officials are elected by popular vote.
>
> "When a court is asked to decide whether a State is required by the Constitution to give each qualified voter the same power in an election open to all, there is no discernible, valid reason why constitutional distinctions should be drawn on the basis of the purpose of the election. If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator. While there are differences in the powers of different officials, the crucial consideration is the right of each qualified voter to participate on an equal footing in the election process. It should be remembered that in cases like this one we are asked by voters to insure that they are given equal treatment, and from their perspective the harm from unequal treatment is the same in any election, regardless of the officials selected."

The judgment of the District Court is questionable under a decade of this Court's decisions. It at least warrants plenary review here.