612 F.2d 208
 VOTER INFORMATION PROJECT, INC. and Robert C. Williams,
Plaintiffs-Appellants,
v.
CITY OF BATON ROUGE et al., Defendants-Appellees.
Robert Judge EAMES and Voter Information Project, Inc.,
Plaintiffs-Appellants,
v.
Edwin W. EDWARDS, Governor of the State of Louisiana et al.,
Defendants-Appellees.
 Nos. 77-3089, 77-3090.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 21, 1980.
 
 Murphy W. Bell, Nelson D. Taylor, Robert C. Williams, Baton Rouge, La., for plaintiffs-appellants.
 Frank J. Gremillion, Baton Rouge, La., for defendants-appellees.
 Joseph F. Keogh, Baton Rouge, La., for Bd. of Supervisors, et al.
 Larry S. Bankston, Baton Rouge, La., for Lacaze & Demo. Exec. Comm.
 Carmack M. Blackmon, Asst. Atty. Gen., Tommy D. Teague, Staff Atty., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for Edwards, et al.
 Appeals from the United States District Court for the Middle District of Louisiana.
 Before JONES, BROWN and RUBIN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 These two consolidated cases raise constitutional challenges under 42 U.S.C.A. § 1983 to the at-large schemes of electing City Judges in Baton Rouge and State Judges in East Baton Rouge Parish. Plaintiffs[1] allege that these election systems invidiously dilute the voting strength of black persons residing in Baton Rouge and East Baton Rouge Parish in violation of the Fourteenth and Fifteenth Amendments to the Constitution. The District Court dismissed each of the actions under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. We reverse and remand for further proceedings.
 
 I.
 
 2
 The two election schemes under attack are very similar in structure. The City Court of Baton Rouge, Louisiana has three Judges. All three are elected by popular vote, with each candidate running for a particular division, designated "A", "B", and "C". A candidate must select one division in which to run, and each voter in the City votes for a Judge for each division. All three Judges serve the entire City. Similarly, candidates for State Court Judge of the 19th Judicial District Court of East Baton Rouge Parish run by divisions 13 in all designated "A" through "M". Each candidate selects one division in which to run, each voter in the Parish votes for a candidate for each division, and each Judge elected for a division serves the entire 19th Judicial District.
 
 
 3
 No black person has ever been elected to the Baton Rouge City Court or to the 19th Judicial District Court of East Baton Rouge Parish. And according to the 1970 U.S. Census, black citizens make up well over 25% Of the population of the City of Baton Rouge and East Baton Rouge Parish. Most of the black citizens are concentrated in a small number of geographical areas of the City and Parish.
 
 II.
 
 4
 It is well-established that a complaint should not be dismissed under F.R.Civ.P. 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). See also Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263, 268 (1972); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652, 654 (1972). And for purposes of a motion to dismiss, material allegations of the complaint are taken as admitted, Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404, 416 (1969), and the complaint is to be liberally construed in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). Because of these principles, "dismissal of a claim . . . on the basis of the barebone pleadings is a precarious one with a high mortality rate." Barber v. M/V "Blue Cat", 372 F.2d 626, 627, 1969 A.M.C. 211, 212 (5th Cir. 1967).
 
 
 5
 In this case, the District Court dismissed the complaints on the ground that the "one man one vote" principle does not apply to the election of Judges. In a nutshell, the "one man one vote" rule means that "each person's vote counts as much, insofar as it is practicable, as any other person's." Hadley v. Junior College District, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45, 49-50 (1969).[2] The District Court found three cases to be "dispositive" on the matter: Wells v. Edwards, 347 F.Supp. 443 (M.D.La.1972), Aff'd, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973); Holshouser v. Scott, 335 F.Supp. 928 (M.D.N.C.1971); and Buchanan v. Rhodes, 249 F.Supp. 860 (N.D.Ohio 1960).
 
 
 6
 Wells involved a challenge by a Jefferson Parish, Louisiana voter seeking reapportionment of the judicial districts from which a number of Justices of the Louisiana Supreme Court are elected. The District Court granted defendants' motion for summary judgment. While recognizing that there appeared to be "considerable deviation between the population of some of the judicial districts involved," 347 F.Supp. at 454, the Court nonetheless concluded that "the concept of one-man, one-vote apportionment does not apply to the judicial branch of government." Id. The Court distinguished Judges from legislators on the ground that "Judges do not represent people, they serve people." Id. at 455, Quoting Buchanan v. Rhodes, supra, 249 F.Supp. at 865. The Supreme Court affirmed without opinion, with Justice White writing a vigorous dissent (joined in by Justices Douglas and Marshall).
 
 
 7
 In Holshouser, the District Court upheld a system whereby Judges were nominated in primary elections conducted in individual districts, but were elected by statewide vote. In Buchanan, the District Court upheld a scheme allocating at least one Judge to each county in Ohio, regardless of its size. Like Wells, both Holshouser and Buchanan held that the "one man one vote" principle does not apply to Judges. While excellent arguments have been made as to why the "one man one vote" principle Should apply to Judges, see Note, The Equal-Population Principle: Does It Apply to Elected Judges?, 47 Notre Dame Lawyer 316 (1971); Holshouser v. Scott, supra, 335 F.Supp. at 934-35 (Craven, J., dissenting), we are bound with respect to this specific issue by the Supreme Court's affirmance in Wells.
 
 
 8
 The problem with the District Court's opinion, however, is that it assumes the "one man one vote" principle was the exclusive theory of plaintiffs' complaints. In addition to a rather vaguely formulated "one man one vote" theory, plaintiffs contend that both in design and operation, the at-large schemes dilute the voting strength of black citizens and prevent blacks from being elected as Judges. As the complaint attacking the City Judge election system alleges[3]:
 
 
 9
 25. The sole purpose of the present at-large system of election of City Judge is to ensure that the white majority will continue to elect all white persons for the offices of City Judge.
 
 
 10
 26. The present at-large system was instituted when "Division B" was created as a reaction to increasing black voter registration and for the express purpose of diluting and minimizing the effect of the increased black vote.
 
 
 11
 27. In Baton Rouge, there is a continuing history of "bloc voting" under which when a black candidate opposes a white candidate, the white majority consistently casts its votes for the white candidate, irrespective of relative qualifications.
 
 
 12
 Plaintiffs contend that since most of the black population of Baton Rouge and East Baton Rouge Parish is concentrated in a few geographical areas, black citizens could, under a single-member district plan, elect at least some black Judges.
 
 
 13
 To our knowledge, no court has ever suggested that such allegations would fail to state a claim under F.R.Civ.P. 12(b)(6). On the contrary, the various "one man one vote" cases involving Judges make clear that they do Not involve claims of race discrimination as such.[4]
 
 
 14
 To hold that a system designed to dilute the voting strength of black citizens and prevent the election of blacks as Judges is immune from attack would be to ignore both the language and purpose of the Fourteenth and Fifteenth Amendments. The Supreme Court has frequently recognized that election schemes not otherwise subject to attack may be unconstitutional when designed and operated to discriminate against racial minorities. For example, in White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1972), the Court reviewed the constitutionality of multimember districts used for the election of Texas state representatives. The Court affirmed the District Court decision invalidating two multimember districts, reasoning:
 
 
 15
 Plainly, under our cases multimember districts are not per se unconstitutional . . . . But we have entertained claims that multimember districts are being used invidiously to cancel out or minimize the voting strength of racial groups.
 
 
 16
 412 U.S. at 765, 93 S.Ct. at 2339, 37 L.Ed.2d at 324.
 
 
 17
 Similarly, in Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), Rev'g 270 F.2d 594 (5th Cir. 1959) (Brown, J., dissenting), the Court reviewed a constitutional challenge to an Alabama law redefining the boundaries of the City of Tuskegee. The redefinition from a square shape to a twenty-eight sided figure removed from the City all but a few of its 400 black voters, while not removing even one white voter. Various black citizens who were removed from the City boundaries claimed that they were denied the right to vote in municipal elections in violation of the Fourteenth and Fifteenth Amendments. In holding that the allegation stated a claim upon which relief could be granted the Court stated:
 
 
 18
 According to the allegations here made, the Alabama Legislature has not merely redrawn the Tuskegee city limits with incidental inconvenience to the petitioners; it is more accurate to say that it has deprived the petitioners of the municipal franchise and consequent rights and to that end it has incidentally changed the city's boundaries. While in form this is merely an act redefining metes and bounds, if the allegations are established, the inescapable human effect of this essay in geometry and geography is to despoil colored citizens, and only colored citizens, of their theretofore enjoyed voting rights.
 
 
 19
 364 U.S. at 347, 81 S.Ct. at 130, 5 L.Ed.2d at 116-17.
 
 
 20
 Following by analogy the reasoning of such cases as White v. Regester, supra, and Gomillion v. Lightfoot, supra, we hold that the District Court erred in dismissing the complaints under Rule 12(b)(6). As stated, restated, iterated, and reiterated, in reviewing the dismissals of complaints under F.R.Civ.P. 12(b)(6), we are not concerned with the truth of plaintiffs' allegations. If plaintiffs can prove that the purpose and operative effect of such purpose of the at-large election schemes in Baton Rouge is to dilute the voting strength of black citizens, then they are entitled to some form of relief.[5]
 
 
 21
 It may well be true that Judges are elected to serve the people, not to represent them. But this fact makes plaintiffs' claims of racial discrimination no less important and no less deserving of constitutional protection.
 
 
 22
 REVERSED and REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 [1]
 The plaintiffs are Robert C. Williams, a black attorney living in Baton Rouge, Louisiana (in No. 77-3089), Robert J. Eames, a black attorney living in East Baton Rouge Parish (in No. 77-3090), and the Voter Information Project, a non-profit Louisiana corporation organized to promote and protect the voting rights of black and poor citizens (in Nos. 77-3089 and 77-3090). They seek to represent the class of black voters in Baton Rouge (in No. 77-3089) and in East Baton Rouge Parish (in No. 77-3090). The District Court did not rule on whether to certify these named plaintiffs as class representatives
 
 
 [2]
 The "one man one vote" principle was first set forth in Gray v. Sanders, 372 U.S. 368, 379, 381, 83 S.Ct. 801, 807, 809, 9 L.Ed.2d 821, 830, 831 (1963):
 Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment.
 The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing one person, one vote.
 See also Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).
 
 
 [3]
 The complaint in the case attacking the election of State Judges in East Baton Rouge Parish contains virtually identical allegations
 
 
 [4]
 For example, Holshouser v. Scott, supra, which is relied upon by the District Court, states:
 There has been no showing of arbitrary and capricious action by the legislature or that the distinctions, if any, between the citizens and voters are invidious. The plaintiff says his vote cast in the primary election is diluted . . . .
 He does not contend that there is discrimination in either the nomination process or the election process when considered separately.
 
 
 [335]
 F.Supp. at 933. See also Wells, supra, 347 F.Supp. at 456
 
 
 [5]
 Plaintiffs seek declaratory and injunctive relief and the implementation of a single-member district scheme. We intimate no view concerning what relief would be appropriate assuming plaintiffs could prove their allegations