Hoover WHITE, et al., Plaintiffs,

Ralph E. Bradford, etc., Mark G. Montiel, et al., Plaintiffs–Intervenors,

v.

The STATE OF ALABAMA; and James Bennett in his official capacity as Secretary of State for the State of Alabama, Defendants,

Christopher Boehm, Defendant–Intervenor,

United States of America, Amicus Curiae.

Civ. A. No. 94–T–94–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 6, 1994.

Terry G. Davis, Terry G. Davis, P.C.; Solomon S. Seay, Jr., Montgomery, AL, and Samuel H. Heldman, and Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for plaintiffs.

Algert S. Agricola, Jr., Montgomery, AL, James McGowin Williamson, Williamson & Williamson, Greenville, AL, and Albert L. Jordan, Wallace, Jordan, Ratliff, Byers & Brandt, Birmingham, AL, for intervenors-plaintiffs.

Robert Marc Givhan, Asst. Atty. Gen.; Donald V. Watkins, Donald V. Watkins, P.C., Montgomery, AL, and Jonathan C. Rose, Jones, Day, Reavis & Pogue, Washington, DC, for defendants.

Steven H. Rosenbaum, James P. Turner, U.S. Dept. of Justice, Civ. Rights Div., Voting Section, Mark A. Posner, Matthew G. Olsen, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, Kenneth E. Vines, Charles Redding Pitt, U.S. Atty., U.S. Attorney's Office, Montgomery, AL, and Deval L. Patrick, U.S. Dept. of Justice, Civ. Rights Div., Sp. Litigation Section, Washington, DC, for amicus curiae.

*MEMORANDUM OPINION*

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Hoover White, John A. Dillard, and Glenn Moody, all African–Americans, assert, among other claims in this voting rights lawsuit, that the current at-large system of electing Alabama appellate judges dilutes black voting strength, thereby denying African–Americans an equal opportunity to participate in the political process and elect candidates of their choice. They name as defendants the State of Alabama and its Secretary of State. The plaintiffs rest their lawsuit on § 2 and § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. §§ 1973, 1973c (West 1994), and the fourteenth and fifteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983 (West 1994).

During the course of the suit, the following persons intervened as plaintiffs: Mark Mon-

tiel, a judge on the court of criminal appeals and Republican candidate for supreme court in 1994; Johnny Curry, a state legislator and chairman of the Jefferson County Republican Executive Committee; and Jack Williams, executive director of the House Republican Caucus. These Republican intervenors claim that the current at-large system and a proposed final judgment—which has been submitted by the plaintiffs and the defendants in settlement of the plaintiffs' claims and which retains the at-large system—dilute Republican votes in violation of the fourteenth amendment to the United States Constitution. The intervenors invoke the jurisdiction of the court pursuant to 28 U.S.C.A. §§ 1331 and 1343 (West 1993). This cause is now before the court on the defendants' motion for summary judgment on the Republican intervenors' claim. For the reasons that follow, the court will grant the motion.

## I.  BACKGROUND [1]

Alabama's judicial system contains three appellate courts: a supreme court, a court of criminal appeals, and a court of civil appeals. Ala. Const. amend. 328, § 6.01(a). There are nine justices on the supreme court. Ala. Code § 12–2–1 (1986). Each of the courts of appeals is currently composed of five judges. Ala.Code § 12–3–1 (Supp.1994). Pursuant to an opinion issued today approving the proposed settlement, the courts of appeals will be expanded to seven judges each. Appellate judges and justices are elected statewide for a term of six years. Ala. Const. amend. 328, §§ 6.13, 6.15. Vacancies are filled by gubernatorial appointment. Ala. Const. amend. 328, § 6.14. Under the settlement approved today, some remedial appointments will also be made. However, the appellate judicial electoral system's general nature after the consent decree remains one of at-large, statewide elections.

During the proceedings on the voting rights claims that led to the approval of the settlement, the court allowed Montiel, Curry, and Williams to intervene as plaintiffs sup-

---

1. The court summarizes only those aspects of this case that are relevant to the Republican intervenors' claim. A more detailed background

appears in *White v. State of Alabama,* 867 F.Supp. 1519 (M.D.Ala.1994).

porting a single-member districting remedy. The court certified a class consisting of all Alabama electors who are Republican and a subclass consisting of all Alabama electors who are Republican and are not African–American, both classes to be represented by Montiel, Curry, and Williams. The intervenors allege that the settlement and the existing system of electing appellate judges, both of which are, at base, at-large, statewide systems, dilute Republican votes in violation of the fourteenth amendment to the United States Constitution. The essence of the claim is that, because Republican appellate judges could be elected from single-member districts, at-large elections for these judges, which have not produced any Republican winners during the twentieth century, dilute Republican votes.

## II.  DISCUSSION

### A.  *Summary Judgment Standard*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ In the context of a political vote dilution claim, the guide to determining the evidence necessary to survive summary judgment is *Davis v. Bandemer,* 478 U.S. 109,

106 S.Ct. 2797, 92 L.Ed.2d 85 (1986). In *Bandemer,* a majority of the Supreme Court held that political gerrymandering cases brought under the fourteenth amendment are justiciable. *Id.* at 118–127, 106 S.Ct. at 2803–07 (majority opinion).[2] A plurality then went on to require a showing of "both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." *Id.* 478 U.S. at 127, 106 S.Ct. at 2808 (plurality opinion). If the defendants are entitled to judgment as a matter of law on either of these two required elements of a political vote dilution claim, then summary judgment must be granted.

### B.  *Discriminatory Intent*

■ Discriminatory intent is generally considered easier to show than discriminatory effects because if "redistricting is done by a legislature, it should not be very difficult to prove that the likely political consequences of the reapportionment were intended." *Bandemer,* 478 U.S. at 129, 106 S.Ct. at 2809 (plurality opinion); *see also id.* at 128, 106 S.Ct. at 2808. Outside of the reapportionment context, however, intent is more difficult to impute. In the case at hand, the question is the intent behind a statewide election system for appellate judges that has been in place since 1868. Even if the system was not adopted out of an intent to discriminate against Republicans, which the intervenors have not alleged, the court would still have to decide whether the at-large system has been maintained to dilute Republican votes. In order to make this inquiry, the court would have to conduct an examination of disputed facts.[3] Such an examination is inappropriate on a motion for summary judg-

---

**2.** The Supreme Court recently reaffirmed that political gerrymanders in the legislative context are justiciable. *Shaw v. Reno,* — U.S. —, —, 113 S.Ct. 2816, 2828, 125 L.Ed.2d 511 (1993). The parties have not briefed whether judicial political vote dilution cases are also justiciable in light of the rejection of a one-person, one-vote challenge to judicial elections in *Wells v. Edwards,* 347 F.Supp. 453 (M.D.La.1972) (three-judge court), *aff'd mem.,* 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973). The impact of the holding in *Wells* on a political vote dilution claim in the judicial context raises questions that go well beyond what is necessary to decide the merits of the claim before the court. For this

reason, the court assumes on the general authority of *Bandemer* that the intervenors' claim is justiciable.

**3.** James H. Evans, the state attorney general, and Robert A. Martin, the Director of the Alabama Judicial Study Commission, present one view, while intervenor Williams presents another. *Compare* Evans Aff. at 2 *and* Martin Aff. at 6 *with* Williams Supp.Aff. at 2–3. The affidavits and evidence cited in this opinion were submitted by the parties specifically on the issue of Republican vote dilution unless noted as appearing in the record of the main case.

ment. Therefore, the court for purposes of its decision today assumes that discriminatory intent has been shown.

### C. Discriminatory Effects

■ The effects question is "whether a particular group has been unconstitutionally denied its chance to effectively influence the political process." *Bandemer,* 478 U.S. at 132–33, 106 S.Ct. at 2810 (plurality opinion). Such unconstitutional discrimination can either be shown through "evidence of continued frustration of the will of a majority of the voters or effective denial to a minority of voters of a fair chance to influence the political process." *Id.* at 133, 106 S.Ct. at 2811. The intervenors do not allege that Republicans are a majority in Alabama, but that they have been denied an opportunity to elect some Republican appellate judges and justices. An election system that makes winning elections more difficult is not enough to violate the fourteenth amendment. *Id.* at 131–32, 106 S.Ct. at 2810. Rather, proof under *Bandemer* consists of two prongs: "a history of disproportionate results" in elections and "lack of political power and the denial of fair representation." *Id.* at 139, 106 S.Ct. at 2814; *see, e.g., Terrazas v. Slagle,* 821 F.Supp. 1162, 1172 (W.D.Tex.1993) (three-judge court) (per curiam) (discussing two prongs of effects test); *Badham v. Eu,* 694 F.Supp. 664, 670 (N.D.Cal.1988) (three-judge court), *aff'd mem.,* 488 U.S. 1024, 109 S.Ct. 829, 102 L.Ed.2d 962 (1989) (same).

#### 1. Scope of the Inquiry

■ Before addressing the two effects inquiries, the court must entertain a preliminary question as to the scope of the examination. One of the limits on a political vote dilution claim is that "unconstitutional discrimination occurs only when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." *Bandemer,* 478 U.S. at 132, 106 S.Ct. at 2810 (plurality opinion). The key question is the meaning of the phrase "political process as a whole."

A broad view of the phrase contemplates examining, for instance, whether Republicans have been shut out of the political debate, whether there has been interference in Republican party processes, whether elected officials ignore the concerns of Republican citizens, and whether the state political system as a whole discriminates against Republicans. *Badham,* 694 F.Supp. at 670–72. A narrow view of the "political process as a whole" limits it to the relevant election system being challenged. *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 956 n. 24 (4th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993). This view would restrict the court's analysis of the intervenors' claim to the effects of Alabama's appellate judicial electoral system on Republicans.

The court rejects both of these views. The relevant question is whether Republican voters have been denied the right to influence the political process. The broad view places too many obstacles in the way of making such a showing. A political party might be perfectly free of outside interference and have an opportunity to debate the issues, but still have the voting strength of its members diluted. *See Terrazas,* 821 F.Supp. at 1173. On the other hand, the narrow view fails to take into account the balancing effect of parts of the political system outside the area challenged. *Id.* The narrow view also ignores that voters can rationally choose, for example, to vote for Republicans in the executive branch and Democrats in the judicial branch. The court, therefore, will not confine its inquiry to the appellate judicial system, but neither will it demand evidence that goes beyond the question of whether statewide elections are dilutive in the context of the state political system as a whole. *See id.* at 1174.

#### 2. Election History

■ The intervenors' discriminatory effects claim is based on Republicans' undeniably poor record in appellate court elections. The intervenors contrast this with better Republican showings in single-member district elections. The intervenors draw the implication that if appellate court members were elected in single-member districts instead of statewide, Republicans would fare better.

The history of state appellate court elections shows that from 1970 to 1992, Republicans contested only ten of the 37 elections for supreme court seats, and won none of those races.[4] The court of criminal appeals had 23 seats up for election from 1970 to 1992; Republicans contested none of these races.[5] The court of civil appeals had 14 seats up for election from 1970 to 1992; the same Republican candidate contested three of these races, winning none.[6] The lack of Republican candidates for the courts of appeals should not be surprising. There have been only two contested Democratic primaries for the court of civil appeals, both for open seats.[7] There have been only five contested Democratic primaries for the court of criminal appeals.[8] Judicial races in single-member districts show better, but not overwhelming, Republican success. In 1990, Republicans were elected to three of the 11 circuit judgeships up for election and six of 20 district court judgeships.[9] In 1992, Republicans were elected to six of 34 circuit judgeships and zero of 33 district court judgeships.[10]

■ That single-member districts might make it easier to elect Republicans does not suffice to make out a political vote dilution claim. *See Bandemer,* 478 U.S. at 131–32, 106 S.Ct. at 2810 (plurality opinion).[11] Even assuming that the evidence cited above did suffice to show disproportionate election results in a few elections, the court would still have to grant summary judgment because there is not enough evidence of a long-term

pattern since the time Republicans began to contest appellate judicial races. In modern times, Republicans have contested very few statewide judicial races until 1988.[12] Although they have had no success, there have also not been very many elections since Republicans began seriously challenging Democrats. In *Bandemer,* the Supreme Court made clear that trial courts must look at future electoral possibilities. It criticized the lower court because there was no "finding that the 1981 reapportionment would consign the Democrats to a minority status ... throughout the 1980's or that the Democrats would have no hope of doing any better in the reapportionment that would occur after the 1990 census." *Id.* 135–36, 106 S.Ct. at 2812. There is no reason to believe, based on the limited number of contested elections, that Republicans are consigned to perpetual failure in electing appellate judges.

The court is also unable to attribute whatever lack of Republican success there is in appellate court elections to the at-large system. After all, Republicans have experienced growing electoral success in statewide elections. Republican candidates for president have won in Alabama the last four elections.[13] In 1980, Jeremiah Denton won election as a Republican to the United States Senate. In both 1986 and 1990, Republican Guy Hunt was elected governor. He was the first Republican governor in Alabama since Reconstruction. Even assuming that Republicans would be able to elect appellate judges

4. Joint Evidentiary Record for Rule 23(e) Fairness Hearing filed on July 5 and September 13, 14, 16, and 21, 1994 (hereinafter Joint Record) at 452–55.

5. *Id.* at 460–63.

6. *Id.* at 464–66.

7. *Id.* at 465–66.

8. *Id.* at 460–62.

9. Appendix A to the Certification of Secretary of State James Bennett (hereinafter App. A).

10. *Id.*

11. The intervenors are not making a typical political gerrymandering claim that districts have

been drawn in a way that unfairly disadvantages one party in relation to its overall vote statewide. For this reason, the court does not conduct the usual test of disproportionate election results involving a comparison of percentage of statewide votes and percentage of seats. It should be noted that there is no automatic right to representation by single-member districts even if there are enough Republican voters to comprise a majority in a district. *See Bandemer,* 478 U.S. at 136, 106 S.Ct. at 2812 (plurality opinion).

12. Republicans contested only ten of the 37 supreme court races from 1970 to 1992, but of the nine elections since 1988, Republicans have contested seven. Joint Record at 454–55. Similarly, all three of the contested races on the court of civil appeals have been since 1988. *Id.* at 465–66.

13. App. A.

from single-member districts, the evidence does not show that Republicans are unable to do so at-large. To the contrary, statewide electoral success has recently come within Republican reach. Although the intervenors claim that judicial races are different than the statewide races in which Republicans have been victorious, the court is unable to find at this transition time that the pattern of increasing Republican success in Alabama will not eventually extend to appellate judicial elections. The court takes to heart Justice Powell's warning in *Bandemer*:

> "Groups may consistently fail to elect representatives under a perfectly neutral election scheme. Thus, a test that turns only on election results ... likely would identify an unconstitutional gerrymander where none existed."

478 U.S. at 173 n. 13, 106 S.Ct. at 2832 n. 13 (Powell, J., concurring in part and dissenting in part).

### 3. Political Power and Representation

The court further finds that Republicans are not being shut out of those aspects of the political process that affect who is elected to appellate judgeships. Republicans are making inroads at many levels into what has historically been a one-party state. An examination of the political process as a whole, therefore, suggests that Republicans are growing in strength. The evidence also suggests that Republican success in other areas of the political structure will affect Republican ability to achieve seats on appellate courts. For instance, as Republicans gain experience on the trial courts, they will become more qualified candidates for appellate courts. Further, the state political structure has caused Republicans to be appointed to the appellate courts. Governor Hunt appointed Montiel to the court of criminal appeals; however, Montiel decided not to run for that seat when it came up for election. Governor Hunt also appointed B.J. Russell to the court of civil appeals twice. Russell lost his bid for election both times.[14] Admittedly, the court would be disturbed by a demonstrated inability of Republican incumbents to win elections. However, Russell has been the only Republican incumbent to run so far. His lack of success is not enough to suggest that future Republican appointees will be unable to achieve statewide election. In light of increasing Republican success in the political process as a whole, the intervenors' claim is premature.

## III. CONCLUSION

Based on the above analysis, the court finds that the defendants are entitled to judgment as a matter of law.

An appropriate judgment will be entered.

### *JUDGMENT*

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motion for summary judgment, filed by the defendants State of Alabama and Secretary of State James Bennett on June 16, 1994 and amended on June 23, 1994, is granted; and

(2) That judgment is entered in favor of said defendants and against plaintiff-intervenors Mark Montiel, Johnny Curry, and Jack Williams, with said plaintiff-intervenors taking nothing as to their claim that the current at-large system for electing appellate judges and a proposed settlement, filed by the plaintiffs and the defendants on September 15, 1994, dilute Republican votes in violation of the fourteenth amendment to the United States Constitution.

It is further ORDERED that costs are taxed against said plaintiff-intervenors, for which execution may issue.

**14.** Joint Record at 466.