Harold B. SMITH, Dallas C. Ingemunson, Al Jourdan and the Illinois Republican Party, Plaintiffs,

v.

Kenneth R. BOYLE, Hannelore Huisman, Judith A. Jones, Mitchell P. Kobelinski, David E. Murray, Langdon D. Neal, Theresa M. Petrone, Wanda L. Rednour, only in their official capacities as members of the Illinois State Board of Elections, and George H. Ryan, only in his official capacity as Secretary of State of the State of Illinois, Defendants.

No. 97–3005.

United States District Court,
C.D. Illinois,
Springfield Division.

April 16, 1997.

James R. Schirott, Phillip A. Luetkehans, Mary E. Dickson, Kenneth Edward Johnson, Schirott & Associates, Itasca, IL, Byron G. Cudmore, Hinshaw & Culbertson, Springfield, IL, Patrick J. O'Shea, Lombard, IL, Patrick K. Bond, Mirabella & Kincaid, Wheaton, IL, for plaintiffs Harold Smith, Dallas C. Ingemunson and Al Jourdan.

James R. Schirott, Phillip A. Luetkehans, Mary E. Dickson, Kenneth Edward Johnson, Schirott & Associates, Itasca, IL, Patrick J. O'Shea, Lombard, IL, Patrick K. Bond, Mirabella & Kincaid, Wheaton, IL, for plaintiff Republican Party of Illinois.

Charles R. Schmadeke, Office of the Attorney General, Springfield, IL, for defendants.

Mary Lee Leahy, Leahy Law Offices, Springfield, IL, Donald M. Craven, Donald M. Craven, P.C., Springfield, IL, William R. Quinlan, James R. Carroll, Quinlan & Crisham, P.C., Chicago, IL, Dennis A. Rendleman, Illinois State Bar Association, Springfield, IL, for intervenor.

## *OPINION*

RICHARD MILLS, District Judge:

In the main, federal courts should stay out of political matters. Federal judges have no business meddling in uniquely state questions unless those issues are in direct conflict with the United States Constitution.

In 1877, the U.S. Supreme Court held that to redress legislative action, "the people must resort to the polls, not to the courts." [1]

The bottom line: This Court concludes that the redistricting claim here is a nonjusticiable political question that must be left to the legislative and judicial branches of the State of Illinois.

### I. BACKGROUND

In 1970, an Illinois Constitutional Convention convened and formulated a new state constitution.[2] On December 15, 1970, Illinois' electorate ratified this new constitution, and it became effective on July 1, 1971. Therein, sections 2 and 3 of article VI of the Illinois Constitution provide:

§ 2 **Judicial Districts**

The State is divided into five Judicial Districts for the selection of Supreme and Appellate Court Judges. The First Judicial District consists of Cook County. The remainder of the State shall be divided by law into four Judicial Districts of substantially equal population, each of which shall be compact and composed of contiguous counties.

§ 3 **Supreme Court—Organization**

The Supreme Court shall consist of seven Judges. Three shall be selected from the First Judicial District and one from each of the other Judicial Districts....

So went the elections of Illinois' Supreme Court Justices until the beginning of this year.[3] In January, the Illinois General As-

---

1. *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77 (1877).

2. The 1970 Constitution is Illinois' present Constitution.

3. The present configuration of the electoral districts for Illinois' Supreme Court was actually

sembly passed Senate Bill 875 entitled "the Judicial Redistricting Act of 1997". Although under the bill, Cook County still comprises the entire First Judicial District, the bill subdivides the First Judicial District into three separate subdistricts (1A, 1B, and 1C) with each subdistrict to elect one Supreme Court Justice. On April 7, 1997, the Governor signed Senate Bill 875 into law.

In this action, the Republican Party argues that sections 2 and 3 of article VI of the Illinois Constitution violate the Fourteenth Amendment of the U.S. Constitution. Specifically, it claims that said sections violate the Equal Protection Clause. The Republican Party states that since 1970, no Republican nominee has ever won an election to the office of Illinois Supreme Court Justice in the First Judicial District, and it blames this result on the at-large, multi-member election scheme employed in the First Judicial District.

Furthermore, the Republican Party argues that if the First Judicial District were subdivided into three separate subdistricts, its voting strength would be sufficient to elect a candidate from at least one of the three subdistricts. It asserts that the at-large, multi-member method of electing Illinois Supreme Court Justices impermissibly discriminates against Cook County Republican voters. The Republican Party claims that due to the at-large, multi-member election system, its voting strength has been impermissibly diluted in violation of the Equal Protection Clause.

Accordingly, the Complaint asks the Court to declare that sections 2 and 3 of article VI of the Illinois Constitution violate the U.S. Constitution's Equal Protection Clause.

Defendants are the individual members of the Illinois State Board of Elections, the Illinois State Board of Elections as an entity, and Secretary of State George Ryan, in his official capacity, who is responsible for certifying the candidates for the position of Illinois Supreme Court Justice. Defendants offer four arguments as to why the Complaint should be dismissed. First, Defendants argue that Plaintiffs Ingemunson and Jourdan

instituted in 1962 via a statewide referendum. *See* H.R.J. Res. 39, 72d Leg., 1961 Illinois Laws

do not have standing to bring this suit. Second, Defendants assert that the Illinois State Board of Elections enjoys immunity from this suit under the Eleventh Amendment to the U.S. Constitution. Third, Defendants state that Plaintiffs' claim is nonjusticiable. Finally, Defendants claim that Plaintiffs' Complaint fails to sufficiently allege a claim of vote dilution under the Equal Protection Clause.

Accordingly, for these reasons, Defendants argue that Plaintiffs' Complaint should be dismissed.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). Mere conclusions, without supporting factual allegations, are insufficient to support a claim for relief. *Cohen v. Illinois Inst. of Tech.*, 581 F.2d 658, 663 (7th Cir.1978). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

### A. *STANDING*

Before a federal court can consider a cause of action, a plaintiff must establish that he or she has standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 153, 110 S.Ct. 1717, 1721–22, 109 L.Ed.2d 135 (1990); *Doe v.*

3917.

County of Montgomery, Illinois, *41 F.3d 1156, 1159 (7th Cir.1994)*. *In order for a plaintiff to have standing, as an irreducible constitutional minimum:*

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual" or "imminent" not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not.. th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations and footnote omitted); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982); *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 922 (7th Cir.1995).

■ In the instant case, Defendants argue that Plaintiffs Ingemunson and Jourdan lack standing to sue because they have not alleged an injury to themselves, and the Court agrees. Nowhere in their Complaint do Ingemunson or Jourdan allege that they have suffered anything more than a generalized injury as a result of Illinois' at-large, multimember election system in the First Judicial District. A would-be plaintiff must base his or her standing on something more than a generalized injury. *Lujan,* 504 U.S. at 576, 112 S.Ct. at 2144–45; *Whitmore,* 495 U.S. at 160, 110 S.Ct. at 1725–26; *Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975); *Family & Children's Ctr., Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1059 (7th Cir.1994).

In *United States v. Hays,* —— U.S. ——, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), the U.S. Supreme Court held that plaintiffs who did not live in the district which was the alleged subject of unconstitutional racial gerrymandering did not have standing to sue. *Id.* at ——, 115 S.Ct. at 2436. The U.S. Supreme Court opined that because the plaintiffs did not live in the district, they had not suffered an injury in fact. Here, according to the Illinois State Bar Association's *amicus curie* brief, neither Ingemunson nor Jourdan reside in Cook County. Therefore, because both Ingemunson and Jourdan have alleged only a generalized injury rather than an injury in fact, the Court finds that they lack standing to bring this suit.

■ However, Plaintiff Harold B. Smith does have standing to sue.[4] In contrast to Ingemunson and Jourdan, Smith resides in Cook County. Smith is also the Chairman of the Illinois Republican Party. Thus, pursuant to *Hays,* Smith has suffered an injury in fact and not simply a generalized injury. Second, Smith's injury is fairly traceable to Defendants' challenged conduct. Finally, if Smith is victorious in this case, his injury is likely to be redressed. Accordingly, the Court finds that Smith has met the three irreducible constitutional minimums set forth in *Lujan,* and therefore, Smith has standing to bring the present suit.[5]

4. Although Defendants do not challenge Smith's or the Illinois Republican Party's standing, the Illinois State Bar Association argues that neither party has standing to bring this suit. Because the issue of standing cannot be waived, the Court will address Smith's and the Illinois Republican Party's standing to sue. *See Hays,* —— U.S. at ——, 115 S.Ct. at 2435 citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230–31, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *see also Doe,* 41 F.3d 1156, 1161 n. 2 (1994) citing *Freedom From Religion Found., Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir.1988).

5. While the U.S. Supreme Court has stated that "the standing of the committee members to liti-

gate based on injuries to the rights of their respective committees is unsettled", *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991), there is some support for such a proposition. *E.g. Blount v. SEC,* 61 F.3d 938, 940 (D.C.Cir.1995) (holding that a chairman of a state political party who was also a registered broker and dealer in municipal securities had standing to sue the Securities and Exchange Commission); *Schulz v. Williams,* 44 F.3d 48, 52–53 (2nd Cir.1994)(holding a chairman of one political party who intervened in a suit by another political party challenging the legality of New York's ballot nomination petition statute and voter registration lists statute had standing to defend the statutes on appeal); *Bac-*

Likewise, the Illinois Republican Party has standing to bring this suit. The Illinois Republican Party is a statutorily recognized political party. *See* 10 ILCS 5/10–2 (1996). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interest it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Florida,* 508 U.S. 656, 666–67, 113 S.Ct. 2297, 2303–04, 124 L.Ed.2d 586 (1993).

As discussed above, the Illinois Republican Party's members in Cook County would have standing to sue. Second, the Illinois Republican Party's purpose is to elect their candidates to office; therefore, the interest which it seeks to protect is germane to the organization's purpose. Finally, the claim asserted by the Illinois Republican Party does not require the participation of the individual members.

Accordingly, because the Illinois Republican Party is an identifiable group and has met the standards set forth in *Republican Party of North Carolina v. Hunt,* 991 F.2d 1202 (4th Cir.1993), the Court finds that it has associational standing. *See Republican Party of North Carolina v. Martin,* 980 F.2d 943, 956 n. 23 (4th Cir.1992); *Cf. Thornburg v. Gingles,* 478 U.S. 30, 56, 106 S.Ct. 2752, 2769, 92 L.Ed.2d 25 (1986); *Cf. Davis v. Bandemer,* 478 U.S. 109, 132, 106 S.Ct. 2797, 2810, 92 L.Ed.2d 85 (1986).

### B. *ELEVENTH AMENDMENT*

■ The Eleventh Amendment to the U.S. Constitution "prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v.*

*Pugh,* 438 U.S. 781, 781, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978). "This jurisdictional bar applies *regardless of the nature of the relief sought.*" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)(emphasis added). Thus, Plaintiffs' argument that the Eleventh Amendment is inapplicable to the case at bar because they are seeking injunctive, rather than monetary, relief is not persuasive. The Illinois State Board of Elections is an agency of the State of Illinois,[6] and therefore, it is immune from suit under the Eleventh Amendment.

Furthermore, the U.S. Court of Appeals for the Seventh Circuit has held that the proper defendants to a suit challenging the constitutionality of an election statute are the individual members of the Illinois State Board of Elections and not the Board as an entity. *Stevenson v. State Bd. of Elections,* 794 F.2d 1176, 1177 (7th Cir.1986); *see also Gleason v. Bd. of Educ. of City of Chicago,* 792 F.2d 76, 79 (7th Cir.1986); *but see Donohue v. Bd. of Elections of State of New York,* 435 F.Supp. 957, 964 (E.D.N.Y.1976). Accordingly, Plaintiffs' suit against the Illinois State Board of Elections is barred by the Eleventh Amendment.

### C. *JUSTICIABILITY*

Like all courts before us which have considered the issue of whether a claim is a nonjusticiable political question, we begin our analysis with *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In *Baker,* the U.S. Supreme Court established that the political question doctrine applies to those matters involving:

a textually demonstrable constitutional commitment of the issue to coordinate political department; or lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertak-

---

hur v. Democratic Nat'l Party,* 836 F.2d 837, 840 (4th Cir.1987) (holding a member of a national political party had standing to challenge as an infringement of his fundamental right to vote a political party's delegate selection rule). Fur-

thermore, Smith has alleged an injury to himself as a voter apart from his position as Chairman of the Illinois Republican Party.

**6.** Ill. Const. art. III, § 5; 10 ILCS 5/1A–1 (1996).

ing independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710. Since its holding in *Baker,* the U.S. Supreme Court has made it clear that racial gerrymandering presents a justiciable issue under the Equal Protection Clause.[7] However, the U.S. Supreme Court has also affirmed lower court decisions which have held that purely political gerrymandering claims are nonjusticiable.[8]

 In the instant case, the Court has been asked to determine whether the at-large, multi-member election system employed by Illinois to elect its Supreme Court Justices violates the Equal Protection Clause. Three U.S. Supreme Court cases shed considerable light upon that issue.

First, in *Wells v. Edwards,* 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973) summarily aff'g 347 F.Supp. 453 (M.D.La.1972), the U.S. Supreme Court established that the one person, one vote principle[9] does not apply to the judicial branch. Second, in *Davis v. Bandemer,* 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), the U.S. Supreme Court held that a claim based upon political gerrymandering in state legislative elections, like racial gerrymandering, is a justiciable claim under the Equal Protection Clause. Finally, in *Chisom v. Roemer,* 501 U.S. 380, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991), the U.S. Supreme Court found that judicial elections are covered under § 2 of the Voting Rights Act of 1965 as amended.

In the case at bar, Plaintiffs rely heavily upon *Bandemer* and attempt to distinguish *Wells.* Plaintiffs argue that *Wells* is inapposite here because their claim is not based upon the concept of one person, one vote; rather, their claim is premised upon a claim of vote dilution. However, the Court fails to see how a claim of vote dilution can be divorced from the one person, one vote concept. The Court concurs with Justice Scalia's statements in his dissent in *Chisom:*

And it so happens—more than coincidentally, I think—that in every case in which, prior to the amendment of § 2, we recognized the possibility of a vote dilution claim, the principle of "one person, one vote" was applicable. Indeed, it is the principle of "one person, one vote" that gives meaning to the concept of "dilution." ... "[O]ne person, one vote" has been the premise and the necessary condition of a vote dilution claim, since it establishes the baseline for computing the voting strength that the minority bloc *ought to have* .... If Congress was (through use of the extremely inapt word "representatives") making vote dilution claims available with respect to the election of judges, it was, for the first time, extending that remedy to a context in which "one person, one vote" did not apply.... I frankly find it very difficult to conceive how it is to be determined whether "dilution" has occurred, once one has eliminated *both* the requirement of actual intent to disfavor, minorities, *and* the principle that 10,000 nonminority votes throughout the State should have as much practical "electability" effect as 10,000 nonminority votes.... But my point is that "one person, one vote" is inherent in the normal concept of "vote dilution," and was

7. *E.g. Rogers v. Lodge,* 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982); *City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980); *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Burns v. Richardson,* 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); and *Fortson v. Dorsey,* 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965).

8. *E.g. WMCA, Inc. v. Lomenzo,* 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2 (1965); *Jimenez v. Hidalgo County Water Improvement Dist. No. 2,* 424 U.S. 950, 96 S.Ct. 1423, 47 L.Ed.2d 357 (1976) summarily aff'g 68 F.R.D. 668 (S.D.Tex.1975); *Ferrell v. Hall,* 406 U.S. 939, 92 S.Ct. 2045, 32 L.Ed.2d 328 (1972) summarily aff'g 339 F.Supp. 73 (W.D.Okla.1972); and *Wells v. Rockefeller,* 398 U.S. 901, 90 S.Ct. 1696, 26 L.Ed.2d 60 (1970) summarily aff'g 311 F.Supp. 48 (S.D.N.Y. 1970).

9. See *Gray v. Sanders,* 372 U.S. 368, 379, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); *see also Reynolds v. Sims,* 377 U.S. 533, 587–88, 84 S.Ct. 1362, 1394–95, 12 L.Ed.2d 506 (1964).

an essential element of the pre-existing, judicially crafted definition under § 2.... *Chisom,* 501 U.S. at 414–15, 111 S.Ct. at 2374–75 (Scalia, J. dissenting). Thus, the Court finds it logically inconsistent to say that having one's vote denied equal weight to that of all other voters is a nonjusticiable constitutional claim while at the same time saying that having a political group's voting power diluted by political gerrymandering is a justiciable constitutional claim.

Furthermore, *Bandemer* dealt with the election of state *legislators.* Thus, in our opinion, *Bandemer* created a narrow exception for the election of state legislators which if extended to the judiciary would likely open Pandora's box. While judicial officers, either by convenience or necessity, may perform some administrative and legislative functions, a judge's duties are vastly different from that of a legislator. Legislators represent the people; judges represent and uphold the law.[10] *Chisom,* 501 U.S. at 411, 111 S.Ct. at 2372 (Scalia, J. dissenting). Thus, the Court finds that *Bandemer* is distinguishable from the case at bar because *Bandemer* involved the election of state legislators while the case at bar involves the election of state judicial officers.

In the only case decided subsequent to *Bandemer* which deals with a claim of vote dilution brought by a political party in a state judicial election, the United States Court of Appeals for the Fourth District held that such a claim was justiciable under the Equal Protection Clause. *Republican Party of North Carolina v. Martin,* 980 F.2d 943 (4th Cir.1992). Subsequently, the defendants filed a petition for rehearing *en banc.* The Fourth Circuit denied that petition but not without a scathing dissent. In comparing the two views, the Court finds that Judge Phillips' dissent from the denial of the rehearing *en banc* is the better reasoned of the two opinions.

To our view, *Bandemer* limits the justiciability of political gerrymandering claims to the election of *legislative* officials. *See Republican Party of North Carolina v. Hunt,* 991 F.2d 1202, 1204 (4th Cir.1993) (Phillips, J. dissenting). In both *Bandemer* and *Chisom,* the U.S. Supreme Court discussed *Wells* without overturning it. Therefore, it is clear and established law that the one person, one vote principle is not applicable to judicial elections. *Wells,* 409 U.S. at 1095, 93 S.Ct. at 904; *Hunt,* 991 F.2d at 1204 (Phillips, J. dissenting). It is our interpretation that "the *Bandemer* holding ... is limited by its rationale, by its tone, and by the precedent upon which it relies, to claims respecting legislative elections." *Id.* at 1205.

■ Likewise, the U.S. Supreme Court's opinion in *Chisom* took pains to disclaim any relevance of the broad analysis employed under § 2 of the Voting Rights Act of 1965 to the more narrow analysis used under the Equal Protection Clause. *Chisom,* 501 U.S. at 390, 111 S.Ct. at 2361. A proper reading of *Wells, Bandemer,* and *Chisom* reveals that the only group voting rights claims which are justiciable are those based upon race or color and those brought by political parties regarding gerrymandering claims in legislative elections. These cases stretch the concept of justiciability to its ends, and therefore, we decline to extend it any farther.

Furthermore, the Court can think of no better example than the instant case in which to invoke the "political question doctrine." For purposes of the case at bar, two of the factors in *Baker* leap from the page: (1) lack of judicially discoverable and manageable standards and (2) the impossibility of deciding without an initial policy determination of a kind clearly reserved for nonjudicial discretion. *Baker,* 369 U.S. at 217, 82 S.Ct. at 710. The Court fails to see how the federal judi-

---

10. The Court is cognizant of the fact that the U.S. Supreme Court has held that the term "representative" as it is used in § 2 of the Voting Rights Act of 1965 applies to judges. *Chisom,* 501 U.S. at 399, 111 S.Ct. at 2366. However, *Chisom* by its own admission is limited in character to a question of statutory interpretation. *Id.* at 390, 111 S.Ct. at 2361. *Chisom* did not present a constitutional claim to the U.S.

Supreme Court. *Id.* Moreover, *Chisom* involved a challenge to judicial elections based upon race and color and, therefore, found additional solace in the Fifteenth Amendment. By contrast, Plaintiffs' claim does not involve statutory construction but raises a constitutional challenge. Furthermore, the apportionment challenge is premised upon political party affiliation rather than on race or color.

ciary can establish any sort of manageable standards for resolving claims of vote dilution brought by political parties pursuant to the election of state judges.[11]

Simply put, it is a quagmire. Three separate U.S. Supreme Court Justices recognized and warned the U.S. Supreme Court against entering into this "thickest of thickets." [12] The Seventh Circuit recognized the folly in the "prospect of judicial management of a process that is necessarily political." *La Porte County Republican Cent. Comm. v. Bd. of Comm'rs of County of La Porte,* 43 F.3d 1126, 1130 (7th Cir.1994). There, the Seventh Circuit opined:

> Attempting to banish thoughts of political advantage from the minds of incumbents would (if taken seriously) move all redistricting to the judiciary, where mortals wearing robes would indulge their own political views to some extent no matter how hard they sought to put such matters out of mind. No wonder the Court has insisted that political decisions be left in the main to the political (elected) branches of government rather than to the judiciary, even when the political decisions affect elections.

*Id.* (citations omitted). Notwithstanding the Fourth Circuit's views expressed in *Martin,* the federal judiciary is by no means well-suited to establish manageable standards with which to decide political gerrymandering cases for judicial elections.

Moreover, how can one say that a federal court can determine the constituency of a state's supreme court based upon a claim of political gerrymandering without first making a policy determination of the kind clearly left for nonjudicial discretion? *E.g. Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). The Court would be hard pressed to find a stopping point if justiciability is extended to include vote dilution claims by political parties in judicial elections. It appears to the Court that involvement in the apportionment of districts at the behest of one political party (and obviously to the detriment of another political party) would undoubtedly involve the Court's involvement in future requests to examine district lines by a second, a third, or perhaps numerous political parties. It is not for the Court to decide which political party should be in power during any given election year.

Finally, concerns of federalism and separation of powers call upon the Court to find that Plaintiffs' claim is nonjusticiable. "[F]ederalism and the slim judicial competence to draw district lines weigh heavily against judicial intervention in apportionment decisions; as a rule, the task should remain within the domain of state legislatures." *Miller v. Johnson,* —— U.S. ——, ——, 115 S.Ct. 2475, 2500, 132 L.Ed.2d 762 (1995) (Ginsburg, J. concurring). As Justice Thomas stated:

> Principles of federalism and separation of powers impose stringent limitations on the equitable power of federal courts. When these principles are accorded their proper respect, Article III cannot be understood to authorize the federal judiciary to take control of core state institutions like prisons, schools, and hospitals, and assume responsibility for making the difficult policy judgments that state officials are both constitutionally entitled and uniquely qualified to make.

*Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2197, 135 L.Ed.2d 606 (1996) (Thomas, J. concurring). Accordingly, if federalism dictates that a federal court should abstain from seizing control of prisons, schools, and hospitals, how much more should federalism mandate that we abstain

---

**11.** *But see Martin,* 980 F.2d at 950–51, holding that the same basic standards which apply to vote dilution claims based upon race are applicable to vote dilution claims brought by political parties.

**12.** Chief Justice Burger stated that claims of injustice from political gerrymandering do not belong with the federal judiciary but with elected representatives. *Bandemer,* 478 U.S. at 143–44, 106 S.Ct. at 2816. Justice O'Connor stated that "partisan gerrymandering claims of major political parties raise a nonjusticiable political question that the judiciary should leave to the legislative branch as the Framers of the Constitution unquestionably intended." *Id.* Finally, Justice Powell stated that "federal judges are ill equipped generally to review legislative decisions respecting redistricting." *Id.* at 185, 106 S.Ct. at 2838.

from telling Illinois how it can elect its Supreme Court Justices?

Unquestionably, the U.S. Constitution is the supreme law of the land,[13] and all statutes, regulations, and even state constitutional provisions which conflict with it should be struck down. However, the constituency of a state's judiciary is a "decision of the most fundamental sort for a sovereign entity." *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991). We find Justice O'Connor's remarks in *Gregory* to be controlling on the issue sub *judice:*

> The present case concerns a state constitutional provision through which the people of Missouri establish a qualification for those who sit as their judges. This provision goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity. Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign. "It is obviously essential to the independence of the States and to their peace and tranquility, that their power to prescribe the qualifications of their own officers ... should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States."

*Id.* at 460, 111 S.Ct. at 2400 quoting *Taylor v. Beckham,* 178 U.S. 548, 570–71, 20 S.Ct. 890, 898 (1900). Like state imposed qualifications for judges, states should be allowed to determine how its judges are elected without outside interference. Thus, the Court finds that this issue is one best suited to be determined by the Illinois General Assembly and the Illinois court system—the State's legislative and judicial branches.

Accordingly, while the U.S. Supreme Court has found (for better or for worse) that political gerrymandering claims in *legislative* elections are justiciable, the Court can find no valid reason to extend justiciability to include political gerrymandering claims in *judicial* elections.

On the other hand, the Court can think of a host of reasons why we should *not* extend

justiciability to include such a claim. Therefore, the Court finds that Plaintiffs' Complaint states a nonjusticiable political question. Fed. R. Civ. Pro. 12(b)(1); *Baker,* 369 U.S. at 217, 82 S.Ct. at 710.

### D. *RULE 12(b)(6)*

Because the Court has found that Plaintiffs' Complaint raises a nonjusticiable claim, the Court declines to address the merits of Defendants' argument that Plaintiffs have failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV. CONCLUSION

Accordingly, the Court finds that Plaintiffs Ingemunson and Jourdan lack standing to bring this suit.

The Court also finds that Defendant Illinois State Board of Elections is immune from this suit pursuant to the Eleventh Amendment to the U.S. Constitution.

Finally, the Court finds that Plaintiffs' claim is a nonjusticiable political question.

*Ergo,* Defendants' Motion to Dismiss (d/e 21) is ALLOWED. This case is DISMISSED WITH PREJUDICE as to all Defendants.

CASE CLOSED.