Donald G. FIELD, Carl L. Altman, Leonard T. Zolnierkek, James D. Peltier, Stephen R. Weichel, Kevin Boyat, Sr., and Richard E. Hermanson, individually and on behalf of all similarly situated persons, County of Alcona, County of Presque Isle, County of Alpena, and County of Montmorency, Plaintiffs,

v.

State of MICHIGAN and Candace Miller, in Her Official Capacity as Secretary of State for the State of Michigan, Defendants.

No. 02–10180–BC.

United States District Court,
E.D. Michigan,
Northern Division.

March 28, 2003.

Mary R. Minnet, Richard a. Soble, Sobel & Rowe, Ann Arbor, MI, for plaintiffs.

Gary P. Gordon, Katherine C. Galvin, Mich. Dept. of Atty. Gen., Lansing, MI, for defendants.

*OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THIS ACTION WITH PREJUDICE*

LAWSON, District Judge.

The plaintiffs in this case are members of the respective boards of commissioners

of four Michigan counties, together with the counties themselves, that are affected by state legislation that reorganizes the boundaries of six state judicial circuits and changes the number of authorized judgeships in some of those circuits. The plaintiffs contend that due to the effective date of the reorganization in relation to the date of judicial elections, the voters in the affected judicial circuits will not enjoy the service of the circuit court judges for whom they vote for their full terms, but rather will be subject to the judicial decisions of circuit court judges whom they had no hand in choosing at the polls. This circumstance, the plaintiffs contend, renders the legislation repugnant to the Equal Protection Clause of the United States Constitution. The plaintiffs have invoked this Court's federal question jurisdiction, but also raise additional arguments based on the Michigan constitution.

The defendants, identified as the State of Michigan and its secretary of state, have filed a motion to dismiss or for summary judgment on the ground that the plaintiffs' federal claim is so insubstantial that it is insufficient to invest this Court with subject matter jurisdiction under 28 U.S.C. § 1331. The plaintiffs have opposed the defendants' motion and have filed a summary judgment motion of their own. The parties have submitted a joint statement of stipulated facts, which permits the Court to adjudicate the pending motions.

The Court concludes that the plaintiffs' claim under the Equal Protection Clause, also invoked under 42 U.S.C. § 1983, is not wholly insubstantial or obviously frivolous, and therefore the plaintiffs have stated a claim that "arises under the Constitution [or] laws ... of the United States." 28 U.S.C. § 1331. However, the plaintiffs have not demonstrated an actual equal protection violation, and the Court will find against the plaintiffs on the merits as to that claim. The Court further finds that principal of comity counsels against exercising supplemental jurisdiction over the state constitutional claims, and will therefore dismiss them without prejudice.

## I.

According to the parties' stipulation, Public Act 92 of the Michigan Public Acts of 2002 was signed into law on April 9, 2002. The legislation was passed on March 19, 2002, but would not take effect until 90 days from the end of the legislative session, that is, April 1, 2003, since the Act did not garner the support of two-thirds of the members of both houses of the Michigan legislature. *See* Mich. Const art. IV, § 27 (1963).

Although Public Act 92 both adds new sections and amends other provisions of Michigan's Revised Judicature Act, the plaintiffs challenge only those provisions that reorganize the circuit courts.[1] The challenged portions of Public Act 94 affect only certain designated counties and circuit courts by realigning the jurisdictional boundaries of the 11th, 23rd, 26th, 34th, 50th, and 53rd judicial circuits. Specifically, Alcona County will be moved from the 26th Circuit to become part of the 23rd Circuit; the 23rd Circuit will gain one judgeship (for a total of two) and the number of authorized judgeships for the 26th Circuit will be reduced from two to one. Montmorency and Alpena Counties will remain in the 26th Circuit Court. Presque Isle County will be moved from 26th Circuit to join Cheboygan County as the 53rd Circuit; however, the 53rd Circuit will still

---

1. As codified, the provisions that alter the circuit court boundaries are Mich. Comp. Laws § 600.512 (11th Circuit), Mich. Comp. Laws § 600.524 (23rd Circuit), Mich. Comp. Laws § 600.527 (26th Circuit), Mich. Comp. Laws § 600.535 (34th Circuit), Mich. Comp. Laws 600.549b (50th Circuit), and Mich. Comp. Laws § 600.549e (53rd Circuit).

have one authorized judgeship. Arenac County will be moved from the 34th to the 26th Circuit, and the number of authorized judgeships for the 34th Circuit will be reduced from two to one. The six affected judicial circuits and fifteen counties will realize a net loss of one judgeship.

Public Act 92 amends Mich. Comp. Laws § 600.524 to provide that "[t]he additional judgeship in [the 23rd] circuit shall be filled by the incumbent circuit judge of the thirty-fourth circuit residing in Arenac county with a term ending January 1, 2009, who shall serve as judge of the twenty-third circuit for the balance of the term to which he or she was elected or appointed." To accomplish the elimination of one judgeship in the 26th Circuit, Section 527 of Public Act 92 directs that the circuit shall have one judge beginning January 1, 2005, or "the date on which a vacancy occurs in the office of circuit judge for this judicial circuit," whichever is earlier.

In the November 2002 election, the plaintiffs and other voters in Alcona and Presque Isle counties, who are currently in the 26th Circuit, cast votes for judges who will be in that circuit for three of the judge's seventy-two month term. On April 1, 2003, Presque Isle County will be moved to the 53rd Circuit and Alcona County will be moved to the 23rd Circuit. Elections will be held in the new circuits in November 2008 unless a vacancy is created and a special election is required. Public Act 92 affects only voters in certain delineated counties rather than voters throughout the state.

The parties submitted their motion papers to the court and agreed that the issues could be decided without oral argument. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

## II.

■ The defendants first contend that this Court lacks subject matter jurisdiction because the plaintiffs' equal protection claim is foreclosed by the Supreme Court's summary affirmance of a similar challenge to Louisiana's apportionment scheme for the election of state supreme court justices in *Wells v. Edwards,* 347 F.Supp. 453, 455 (M.D.La.1972) (three-judge panel), *summarily aff'd,* 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973). Since the equal protection claim "is no longer open to serious discussion," the defendants believe that no substantial federal question supports the exercise by this Court of its federal question jurisdiction. *See Wal–Juice Bar, Inc. v. Elliott,* 899 F.2d 1502, 1505 (6th Cir.1990) (finding that no federal question jurisdiction exists where "[i]t is altogether evident that the sole federal constitutional question presented here, although presented in various guises, is no longer open to serious discussion in view of preexisting decisions of the Supreme Court.").

When no diversity jurisdiction is apparent from the complaint, subject matter jurisdiction will not lie unless a substantial federal question is apparent from the allegations of the complaint. *See Ex parte Poresky,* 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Claims do not meet this criterion when they are "devoid of merit," "wholly insubstantial," "obviously frivolous," "plainly unsubstantial," or "no longer open to discussion." *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (collecting cases). A more functional formulation was provided by the *Poresky* Court:

The question may be plainly unsubstantial, either because it is obviously with-

out merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy. *Poresky,* 290 U.S. at 32, 54 S.Ct. 3. A case is "obviously without merit" if the complaint alleges only "a frivolous connection between the constitution and the subject matter of the dispute," or if the claim in question is "immaterial to the real controversy." *Garvin v. Rosenau,* 455 F.2d 233, 239–40 (6th Cir.1972) (finding no basis for the district court's conclusion that students' first amendment suit against principal was insubstantial when he refused to recognize the students' committee solely because of the students' political views).

On the other hand, "claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial." *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). In *Goosby,* the Supreme Court reversed the determination by the Court of Appeals for the Third Circuit that a suit by Pennsylvania pretrial detainees challenging the denial of their right to vote was barred by an earlier Illinois case that denied only the right to vote absentee while detained. While the earlier decision may have placed the likelihood of success in doubt, it did not address situations in which the right to vote had been denied altogether. As a result, the earlier decision could not be said to have "foreclose[d] the subject," and the case was remanded for consideration on the merits. *Id.* at 518, 522, 93 S.Ct. 854. *See also Hagans,* 415 U.S. at 539–41, 94 S.Ct. 1372 (holding that plaintiffs' suit was not insubstantial because (1) no prior case existed addressing the regulation being challenged and (2) the allegation that the regulation in question violated federal law was not patently irrational).

In this case, the plaintiffs challenge the realignment of judicial circuits on the basis that the relative strength of their votes will be diluted, and that they will not reside in a region served by a judicial officer whom they have elected for an entire term. This was not the precise claim presented in *Wells.* In that case, the issue presented was the constitutionality of an apportionment scheme for the election of state supreme court justices from districts that did not contain equal numbers of residents. The plaintiffs there advanced the now-familiar "one-person-one-vote" argument announced in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), but the three-judge court found the rule inapplicable to judicial elections. *Wells,* 347 F.Supp. at 455.

The plaintiffs' claim here is slightly different. They argue that the legislation withdraws from them the privilege of service of a judicial officer whom they have elected, and substitutes the service of a judge over whose selection they had no choice. The plaintiffs insist that this circumstance results in the unconstitutional dilution of their votes, contravening the Equal Protection Clause.

The Court does not find this to be a wholly irrational claim. Nor has this legislation ever been challenged previously or subject to judicial scrutiny. The federal constitutional claim is not so entirely insubstantial so as not to invest jurisdiction in this Court under 28 U.S.C. § 1331. The defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), therefore, will be denied.

### III.

Nonetheless, to avoid the impact of *Wells,* the plaintiffs must somehow establish that their equal protection claim does

not rest upon the bedrock principle of one-person-one-vote, since the Supreme Court's summary affirmance requires this Court to conclude that Equal Protection Clause claims animated by this doctrine are not applicable to judicial elections.[2] In attempting to distance themselves from that doctrine, the plaintiffs first argue that one-person-one-vote is merely one implementation of equal protection principles with regard to voting. No citation is provided for this statement, however, and Sixth Circuit case law demonstrates that individual claims of vote dilution, debasement, and the like all stem from the one-person-one-vote jurisprudence of the Supreme Court. *See Board of County Comm'rs of Shelby County, Tenn. v. Burson,* 121 F.3d 244, 247–48 (6th Cir.1997) (explaining the basis of vote dilution and debasement principles).

Second, the plaintiffs refer to cases interpreting the Voting Rights Act, suggesting that these decisions affect the *constitutional* claim of equal protection. The Supreme Court has explicitly distinguished the two, however. In *Chisom v. Roemer,* 501 U.S. 380, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991), the Court held that elected judges were "representatives" under the Voting Rights Act even though, as a matter of constitutional law, they were not subject to election scrutiny under the one-person-one-vote principles of the Fourteenth Amendment. *Id.* at 390, 402–03, 111 S.Ct. 2354. The Voting Rights Act "was enacted to protect voting rights that are not adequately protected by the Constitution itself." *Id.* at 403, 111 S.Ct. 2354.

The plaintiffs' citation to *Cousin v. Sundquist,* 145 F.3d 818, 834 (6th Cir.1998), is similarly nondispositive, as that case also dealt with the diagnosis and remedy for problems treated by the Voting Rights Act, not the Constitution.

Third, the plaintiffs cite various cases that upheld the one-person-one-vote principle either in very general terms or specifically for *legislative* and *executive* branch elections, none of which have any bearing on the Supreme Court's summary affirmance in *Wells. See, e.g., Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (rejecting fifteen-month residency requirement for new voters); *Hadley v. Junior College District,* 397 U.S. 50, 53–54, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (requiring one-person, one-vote compliance in election for local trustees who performed various legislative and executive governmental functions); *Reynolds v. Sims,* 377 U.S. 533, 562–63, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (requiring districts for state legislators to be equally apportioned by population); *Kramer v. Union Free Sch. Dist.,* 395 U.S. 621, 628–29, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (requiring apportionment to elect school board officials, even though they could otherwise merely have been appointed to their positions).

Finally, the plaintiffs also rely on the decisions in *Republican Party of North Carolina v. Martin,* 980 F.2d 943 (4th Cir.1992), and *Smith v. Boyle,* 144 F.3d 1060, 1063 (7th Cir.1998), for the proposition that the Equal Protection Clause ap-

---

**2.** This summary affirmance admittedly "extends no further than the precise issues presented and necessarily decided by those actions," *Anderson v. Celebrezze,* 460 U.S. 780, 784 n. 5, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), but because *Wells* squarely held that the plaintiff's cause of action did not exist as a matter of law, the Supreme Court's affirmance of that holding makes it binding prece-

dent until revisited by the Supreme Court. *See Smith v. Boyle,* 144 F.3d 1060, 1061 (7th Cir.1998) (recognizing that *Wells* precludes any one-person, one-vote claim under the Equal Protection Clause when challenging judicial elections); *Kuhn v. Miller,* No. 98–2012, 1999 WL 1000850, at *4 (6th Cir. Oct.28, 1999) (unpublished opinion) (citing this principle from *Smith* with approval).

plies to judicial elections. Those cases, however, explicitly *distinguished* the one-person-one-vote cases and discussed only vote dilution claims arising under the Supreme Court's decision in *Davis v. Bandemer*, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), which concerned the dilution of citizens' ability to influence political decisions through *political groups*. In order to raise a substantial federal claim under *Bandemer*, the plaintiffs would have to demonstrate (1) that the legislature gerrymandered the court reorganization with the intention to dilute the votes of the residents of the affected counties (2) that those citizens comprise an identifiable political group, and (3) that the group in question was shut out of the political process, as demonstrated by multiple elections. *See O'Lear v. Miller*, 222 F.Supp.2d 850, 854 (E.D.Mich.2002) (three-judge court).

The Court concludes that the plaintiffs' equal protection claims can only be based on vote dilution, and that such claims all trace their origin to, and are dependent upon, the one-person-one-vote doctrine ordained in *Baker v. Carr*. However, as noted above, in *Wells v. Edwards*, the three-judge district court rejected the plaintiff's claim that Louisiana had unconstitutionally apportioned judicial districts in violation of *Hadley*. The court declined to reach the question of vote dilution because it concluded "that the concept of one-man, one-vote apportionment does not apply to the judicial branch of the government." *Id.* at 454. "Judges," the Court concluded, "do not represent people, they serve people." *Id.* at 455. On appeal, the Supreme Court summarily affirmed the judgment of the panel over a strenuous objection by three justices that the case was wrongly decided. *See Wells v. Edwards*, 409 U.S. 1095, 1095–98, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973).

The rule of *Wells* applies here. Since the law is clear, and there is no genuine issue of material fact, the defendants are entitled to summary judgment of dismissal on the plaintiffs' claim under the Equal Protection Clause. *See* Fed. R. Civ. Pro. 56(c). The plaintiffs have also asserted the same claim under 42 U.S.C. § 1983. However, Section 1983 does not itself create federal rights, but only provides judicial relief for the violation of rights arising under the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The plaintiffs' federal claims, therefore, will be dismissed.

## IV.

The plaintiffs have also advanced claims arising under Michigan law under this Court's supplemental jurisdiction, since those claim form part of the same controversy as the equal protection claim. *See* 28 U.S.C. § 1367(a). However, Section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
>
> (1) the claim raises a novel or complex issue of State law, ·
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed for want of jurisdiction, all other state-law claims must be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir.1996). However, if the federal claims were dismissed on the

merits, the question of whether to retain jurisdiction over the state-law claims rests within the Court's discretion. *Blakely v. United States,* 276 F.3d 853, 860 (6th Cir. 2002). Thus, pursuant to this Section 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over state law claims in this case. *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279 (6th Cir.2000).

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Blakely,* 276 F.3d at 863. The exercise of jurisdiction solely over state-law claims is particularly inappropriate when the district court is called upon to rule upon the validity of a State's law under its own constitution. *See Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991) ("It would be, at the very least, imprudent for us to determine a state constitutional claim of first impression."), *cited with approval by Doe v. Sundquist,* 106 F.3d 702, 708 (6th Cir.1997). The Court believes that comity favors the exercise of discretion by declining to entertain the plaintiffs' state law claims here.

## V.

The Court determines that it properly may exercise subject matter jurisdiction over the controversy. However, the defendants are entitled to a judgment as a matter of law on the plaintiffs' federal claims. The Court also declines to exercise supplemental jurisdiction over the plaintiffs' state law claims.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss or for summary judgment [docket # 14] is **GRANTED IN PART AND DENIED IN PART**, and that the plaintiffs' Motion for Summary Judgment [docket # 13] and Motion for Preliminary Injunction [dkt # 2] are **DENIED**.

It is further **ORDERED** that the claims stated in counts I and II of the complaint, which are based on the Equal Protection Clause and 42 U.S.C. § 1983, respectively, are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the remaining claims stated in the complaint are **DISMISSED WITHOUT PREJUDICE**.