965 So.2d 866 (2007)
Reverend Jerry JOHNSON, Sr.
v.
STATE of Louisiana and Kathleen B. Blanco, In Her Official Capacity As Governor of the State of Louisiana, Charles Foti, In His Official Capacity as Attorney General and AL Alter, In His Official Capacity as Secretary of State.
No. 2006 CA 2024.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
Rehearing Denied August 3, 2007.
*867 Ronald R. Johnson, Baton Rouge, for PlaintiffAppellant Rev. Jerry Johnson, Sr.
William P. Bryan, III, Baton Rouge, for DefendantsAppellees State of Louisiana, et al.
Before: KUHN, GAIDRY, and WELCH, JJ.
WELCH, J.
Plaintiff, Reverend Jerry Johnson, Sr., appeals a judgment of the trial court sustaining defendants' peremptory objection raising the exception of no cause of action, and dismissing his petition for declaratory and injunctive relief. We affirm.

BACKGROUND
On March 16, 2006, plaintiff, a black voter residing in the City of Baton Rouge, Louisiana, filed this petition for declaratory and injunctive relief against the State of Louisiana, Governor Kathleen Blanco, Attorney General Charles Foti, and Secretary of State and Chief Election Officer, Al Ater. Therein, plaintiff attacked the present system for electing judges to the Baton Rouge City Court on the basis that it violated the equal protection and due process *868 clauses of the Louisiana Constitution. The challenged provisions, La. R.S. 13:1952(4)(b) and (c) (hereafter sometimes referred to as the "Judicial Election Plan") provide that the five judges on the Baton Rouge City Court are to be elected from two election districts. Two judges are elected from Election Section 1, and three judges are elected from Election Section 2.
In his petition, plaintiff alleged that in 1993 when the Judicial Election Plan was first enacted, Election Section 1 contained a majority of black citizens and a majority of black voting age population, while Election Section 2 contained a majority of white citizens and a majority of white voting age population. However, plaintiff averred that the most recent United States Census data and records of the Louisiana Department of Elections and Registration show that significant demographic changes occurred in the election districts, with black population increasing in both election sections and white population declining in both election sections. Plaintiff alleged that the limitation of the number of judges in Election Section 1 to two judges unlawfully dilutes black voting strength, thereby resulting in a denial or abridgment of his right to vote.
In the petition, plaintiff sets forth four causes of action, all based on state law.[1] In the first two causes of action, plaintiff charged that the Judicial Election Plan violated the principle of "one-person, one-vote," which recognizes the right of all qualified citizens to vote and protects against the dilution of the weight of a citizen's vote. See Louisiana Republican Party v. Foster, 96-0314, p. 8 (La.5/21/96), 674 So.2d 225, 230. Plaintiff claimed that the application of the current election system, in light of the changing demographics of the election districts, operated to prevent equalization or proportionality among the Baton Rouge City Court's election districts. Therefore, he insisted, the Judicial Election Plan violated his right to vote, prohibited him from equally participating in the election process, and from electing judicial candidates of his choice in violation of the Equal Protection Clause of the Louisiana Constitution Article I, § 3 and state law. He charged that La. R.S. 13:1952(4)(b) and (c), which established the system for electing the Baton Rouge City Court judges, amounts to as a statutory voting rights provision that embodies the concept of one-person, one-vote.
In his third cause of action, plaintiff claimed that application of the Judicial Election Plan had the effect of disenfranchising black voters and thus discriminated against him because of his race, in violation of equal protection guarantee clause. La. Const. art. I, § 3. Specifically, he alleged that the current plan intentionally discriminated against black voters by reducing the black population and voting strength of Election Section 1 in order to prevent them from being able to elect other candidates of their choice, by failing to provide for or require the re-drawing of election districts over regular intervals, and by failing to take into account the demographic and voting changes in the city's population. Plaintiff alleged that the State could have remedied the disparate impact on black voters in the City of Baton Rouge and salvage the plan by passing Louisiana House Bill 1013 in 2003 offered by minority members of the House of Representatives to reapportion the election districts to reflect population and voter *869 gains or losses occurring since 1993. Plaintiff asserted that the State, through the Legislature, acted arbitrarily, capriciously and unreasonably, or engaged in invidious action by maintaining the current election plan despite awareness of the changing population in the City of Baton Rouge. Moreover, he alleged that he did not have to prove intentional discrimination to maintain a cause of action under Louisiana's equal protection clause, but only had to demonstrate vote dilution or that the changes had a disparate impact upon him because of his race. In the final cause of action, plaintiff insisted that by failing to incorporate regular intervals for assessment and implementation of redistricting of the elective offices for the Baton Rouge City Court Judges, the State violated his due process rights protected by the Louisiana Constitution.
By way of relief, plaintiff sought a declaratory judgment determining that Judicial Election Plan is unlawful, null, and void because: (1) the State illegally uses outdated and or inaccurate census data to conduct Baton Rouge City Court judicial elections; (2) the plan illegally dilutes the voting rights of black voters in the City of Baton Rouge; (3) the plan illegally enforces and maintains malapportioned election districts; and (4) the plan violates due process and equal protection guarantees by failing to provide regular intervals to redistrict the judicial offices. Plaintiff asked that the court permanently enjoin the defendants from holding, supervising, or certifying any elections under the Louisiana Judicial Election Plan, set a deadline for authorities to enact and adopt a new redistricting plan for all judicial offices of the Baton Rouge City Court, require the State to reassess and redraw the election sections no less than once every ten years, and order a redistricting plan for Election Sections 1 and 2 that did not dilute black voting strength or violate plaintiff's due process and equal protection rights in the event the State failed to adopt a plan by a deadline established by the court.
The defendants filed an exception of no cause of action, urging that the one-person, one-vote principle relied on by plaintiff in support of his vote dilution claims is not applicable in judicial elections. Thereafter, plaintiff filed a host of motions including, among others, a motion to dismiss the exception of no cause of action, a request for an evidentiary hearing on the exception of no cause of action, motions for expedited hearings and conferences, as well as numerous motions related to discovery requests.
Following a hearing on the motions, the trial court denied all of plaintiff's motions, but granted the defendants' motion to vacate an order deeming certain facts admitted because of the defendants' failure to file timely responses to a request for admissions of fact. Thereafter, the court granted the defendants' exception of no cause of action, dismissing all of plaintiff's claims. This appeal, taken by plaintiff, followed.

DISCUSSION
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Ramey v. DeCaire, XXXX-XXXX, p. 7 (La.3/19/04), 869 So.2d 114, 118. In the context of the peremptory exception, a cause of action is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. Id. No evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931. Consequently, a court reviews the petition and accepts well-pleaded *870 allegations of fact as true. The issue at the trial on the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Id.
This court reviews a judgment of the trial court pertaining to an exception of no cause of action de novo. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief. Ramey, XXXX-XXXX, at pp. 7-8, 869 So.2d at 119.
In this appeal, plaintiff insists that because census data has shown significant populations shifts in Election Sections 1 and 2, these sections must be redrawn based upon such changes in order to satisfy the one person, one vote requirement. In support of their claim that plaintiff does not have a cause of action, defendants cite federal jurisprudence holding that the principle of one-person, one-vote does not apply to judicial elections.
The principle of one-person, one-vote stems from the jurisprudence of the United States Supreme Court. In a long line of cases, the United States Supreme Court has held that a qualified voter has a constitutional right, under the 14th Amendment's equal protection clause, to vote in elections without having his vote wrongfully denied, debased, or diluted. Hadley v. Junior College Dist. of Metropolitan Kansas City, Mo., 397 U.S. 50, 52-53, 90 S.Ct. 791, 793, 25 L.Ed.2d 45 (1970). In Hadley, the Supreme Court held that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the federal constitution's equal protection clause requires that each qualified voter must be given an equal opportunity to participate in that election. Moreover, the Court stated, when members of an elected body are chosen from separate districts, each district must be established on an equal basis that will insure, as far as practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. Hadley, 397 U.S. at 56, 90 S.Ct. at 795.
This principle has never been held to be required in any and all elections, but rather, has been applied only in national, state, and local elections of officials who exercise "governmental powers." See Louisiana Republican Party, 96-0314 at p. 8, 674 So.2d at 230, and cases cited therein. The federal courts have squarely held that the concept of one-person, one-vote apportionment does not apply in judicial elections.
In Wells v. Edwards, 347 F.Supp. 453 (M.D.La.1972), aff'd, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973), a plaintiff sought an order compelling the Louisiana Legislature to enact a plan of apportionment of judicial districts in accordance with the one-person, one-vote principle. In holding that a plaintiff did not have a cause of action as a matter of law to challenge judicial elections on the basis of one-person, one-vote, the court observed that the primary purpose for the rule is to ensure that each official member of an elected body speaks for approximately the same number of constituents. However, the court stated that judges do not represent people, instead, they serve people. Moreover, the court stressed, a state's judiciary, unlike its legislature, is not an organ responsible for achieving representative government. Wells, 347 F.Supp. at 455-456. The United States Supreme Court summarily affirmed the district court's decision. Wells, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973).
Thereafter, in Chisom v. Roemer, 501 U.S. 380, 404, 111 S.Ct. 2354, 2368, 115 L.Ed.2d 348 (1991), the United States Supreme *871 Court held that Section 2 of the Voting Rights Act, 42 U.S.C.A. § 1973, which prohibits voting practices resulting in a denial of the right to vote on account of race, applies to judicial elections. In so doing, the Court distinguished, but did not repudiate, the holding in Wells. Lower federal courts have subsequently ruled that Wells precludes any one-person, one-vote claim under the equal protection clause when challenging judicial elections. See Field v. Michigan, 255 F.Supp.2d 708, 711 (E.D. Mich.2003), and cases cited therein.
Plaintiff attempts to distinguish the Wells decision by asserting that the equal protection clause of Louisiana Constitution provides broader rights than the federal counterpart. It is true that the rights guaranteed under our state constitution are not always synonymous with federal constitutional rights. Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury, 96-0543, p. 9 (La.11/25/96), 684 So.2d 359, 366. However, we have found no circumstance in which a Louisiana court has interpreted the one-person, one-vote rule more broadly than the federal jurisprudence. Instead, in Louisiana Republican Party, 96-0314 at pp. 11-12, 647 So.2d. at 232, the Louisiana Supreme Court held that neither the United States nor the Louisiana Constitution required the application of the one-person, one-vote principle to the election of state central committee members. In so doing, the court made the same observations as the Wells court: committee members did not perform government functions and did not represent the people in the conduct of their government. Louisiana Republican Party, 96-0314 at p. 10, 657 So.2d at 231.
Similarly, we find nothing in the Louisiana Constitution that would mandate extension of the one-person, one-vote rule, a rule designed to promote proportionate equality among voters and elected officials, to judicial elections. Judicial officers are not representatives of the people, and the function of the judiciary is to administer the law, not to espouse the cause of a particular constituency. See Stokes v. Fortson, 234 F.Supp. 575, 577 (N.D.Ga. 1964). Therefore, we conclude that plaintiff does not have a cause of action under Louisiana law to contest the election of judges to the Baton Rouge City Court on the basis of the one-person, one-vote principle, and find that the exception of no cause of action was properly granted as to all claims of vote dilution stemming from this challenge.
We next examine plaintiff's second cause of action based on his claim of racial discrimination. Plaintiff maintains he has consistently alleged in his pleadings that the defendants have engaged in purposeful, arbitrary, and invidious discrimination in allowing his vote to be diluted. He cites as an example of intentional discrimination the fact that legislation was introduced in 2003 to alter the current composition of the Baton Rouge City Court, but failed. Plaintiff insists that the failure of the legislature to pass the measures is itself arbitrary and capricious, and intended to foster invidious discrimination. Plaintiff also claims that to assert a cause of action under Louisiana's equal protection clause based on racial discrimination, he need not show that the State intentionally discriminated against him, rather, he need only allege facts demonstrating vote dilution or that the election system has a "disparate impact" on him on the basis of race.
We disagree. The Louisiana constitutional guarantee of equal protection mandates that state laws affect alike all persons and interests similarly situated. State v. Baxley, 94-2982, p. 6 (La.5/22/95), 656 So.2d 973, 978. Louisiana Revised Statutes 13:1952(4)(b) and (c), which establish *872 that the five Baton Rouge City Court judges will be elected from two election districts, is facially neutral, and does not discriminate against black voters on its face. Our courts have held that a challenger of a statute that does not classify bears the burden of proving that the statute was enacted for a discriminatory purpose. See Baxley, 94-0982 at p. 7 n. 12, 656 So.2d at 978 n. 12. The term "discriminatory purpose" implies more than intent as volition or intent as awareness of the consequences. It implies that the decision maker selected or reaffirmed a particular course of conduct at least in part because of, and not merely in spite of, its adverse effects upon an identifiable group. Baxley, 94-2982 at p. 7, 656 So.2d at 978. Disparate impact upon an identifiable group, while relevant, is not diapositive of the issue. That disparate impact must be traced to a discriminatory purpose to support a claim that a statute is unconstitutional under the equal protection clause. Id.
In the petition, plaintiff alleged that the continued application of La. R.S. 13:1952(4)(b) and (c) to the present-day elections for the Baton Rouge City Court judges discriminates against black voters on the basis of their race. The only factual allegations in the petition regarding this claim are that the State of Louisiana failed to modify the Judicial Election Plan when it became aware of the population changes in the City of Baton Rouge and the Legislature's failure to pass a bill designed to alter the racial composition of the Baton Rouge City Court. Even accepting these allegations as true, the mere fact that the State failed to pass redistricting legislation in light of updated census data is insufficient to state a cause of action for purposeful discrimination. Therefore, we find the plaintiff's petition fails to state a cause of action for intentional racial discrimination under the equal protection clause.
Lastly, we find that plaintiff's petition fails to state a cause of action under the due process clause of the Louisiana Constitution Article I, § 2. To prevail on a due process claim, a plaintiff must show the existence of some property or liberty interest which has been adversely affected by state action. Johansen v. Louisiana High School Athletic Ass'n, XXXX-XXXX, p. 7 (La.App. 1st Cir.6/29/05), 916 So.2d 1081, 1087. We have found no Louisiana case or statute giving a voter the right to demand that judicial election districts be reassessed and redrawn at regular intervals, and find that plaintiff has failed to allege facts sufficient to support his claim that his due process rights have been violated.
For these foregoing reasons, we find that the trial court correctly maintained defendants' exception of no cause of action and dismissed this lawsuit in its entirety.[2] Because of our resolution of this issue, it is unnecessary to address plaintiff's sixteen remaining assignments of error.

CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of *873 this appeal are assessed to plaintiff, Reverend Jerry Johnson, Sr.
AFFIRMED.
NOTES
[1] In a supplemental and amending petition, plaintiff averred that he was not asserting a cause of action under the Fourteenth Amendment to the United States Constitution. He also maintained that he was not seeking relief pursuant to Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.
[2] We note that generally, when the grounds of an objection pleaded by the peremptory exception may be removed by amendment of the petition, the plaintiff is afforded the right to amend the pleading. La. C.C.P. art. 934. Although the petition may have alleged facts supporting a cause of action under Section 2 of the Voting Rights Act, which does not require a showing of intentional discrimination, Chisom, 501 U.S. at 394, 111 S.Ct. at 2363, plaintiff has steadfastly maintained in this litigation that he has no desire to assert a claim under the federal voting rights act. Accordingly, we find that allowing plaintiff to amend the petition under these circumstances is not warranted.